## WEST *v.* CAMDEN.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
DISTRICT OF MARYLAND.

No. 278. Argued April 17, 18, 1890.—Decided May 19, 1890.

An agreement by a director of a corporation to keep another person permanently in place as an officer of the corporation, is void as against public policy, even though there was not to be any direct private gain to the promisor.

A judgment will not be reversed because of an erroneous instruction to the jury, excepted to by the plaintiff, if the plaintiff could not recover in any event.

THE case, as stated by the court, was as follows :

This is an action at law, brought in the Circuit Court of the United States for the District of Maryland, by William C. West against Johnson N. Camden. The principal count of the declaration alleges that, in December, 1877, the defendant engaged the plaintiff to serve as vice-president of the Baltimore United Oil Company of Baltimore County, a Maryland corporation, in which the defendant was largely interested, and promised, in consideration of the plaintiff's agreement to serve as such officer, and of the conveyance and transfer to the company of the property used by the partnership firm of C. West & Sons, (of which, at the time, the plaintiff was a member,) in its business of refining petroleum and dealing in the same and its products, and the consolidation of the business of that firm with the business of the company, which was greatly beneficial to the company and the defendant, that the plaintiff should be retained permanently in his position as such officer, at the salary of at least $5000 per annum, the expected fulfilment of such promise on the part of the defendant being a material part of the consideration of such transfer and consolidation, and additional to the money consideration for the same; that the transfer and consolidation were carried out shortly thereafter by the plaintiff and the other members of the firm, according to the terms of such agreement; that the plaintiff faithfully discharged the duties of such office, and was duly paid therefor, from the time when his services were so engaged until the 15th of January, 1883, when he was removed from his position, without any sufficient reason, in violation of such promise of the defendant, and notwithstanding he tendered himself to the company and to the defendant as ready and willing to continue the performance of such duties. The damages claimed are $50,000. The defendant pleaded *nil debet* and *non assumpsit.*

The plaintiff then amended his declaration, by averring that,

at the time of the making of such promise and of the acceptance of the same, and of the performance by the plaintiff of his part of the agreement, the defendant was able, and proposed and continued to be able, and represented and guaranteed to the plaintiff that he was and would continue to be able, lawfully and properly to procure for, and continue to, the plaintiff such office and employment in the service of the company on the said terms, which office and employment it was for the interest and benefit of the company the plaintiff should have and continue to fill at said salary ; that the defendant, down to and at the time of the removal of the plaintiff from said office, was, and always continued to be able, lawfully and properly, and to the interest and advantage of the company, and with its consent and approval and that of its stockholders, to retain the plaintiff, or cause to procure him to be retained, at said salary, and in the employment of the company ; but that the defendant refused so to do, and procured the plaintiff to be removed from said office and from all employment in the service of the company, and to be deprived of all salary and emolument therefrom.

The case was tried by a jury, which found a verdict for the defendant, on which a judgment was entered for him, with costs, to review which the plaintiff has brought a writ of error.

The Baltimore United Oil Company was incorporated under the general corporation law of the State of Maryland, on the 13th of December, 1877. The plaintiff and the defendant were both of them incorporators of the company, and both of them named as among the first directors, in the certificate of incorporation. On the 15th of December, 1877, the members of the firm of C. West & Sons, including the plaintiff, executed an instrument in writing, by which, for the expressed consideration of $137,500, they conveyed to the company certain land in Canton, Baltimore County, Maryland, used and occupied by them as a refinery, and all the property owned and used by them in the business of refining petroleum, with the good will of such business and the good will of their business at their store in the city of Baltimore. At a meeting of

the board of directors of the company, the defendant, who, as trustee, subscribed for 5059 shares out of the 6000 shares which constituted the capital stock, was elected president, and the plaintiff, who subscribed for 458 shares, was elected vice-president at a salary of $5000 a year. The subscription made by the defendant for the 5059 shares, as trustee, was made for the Standard Oil Company, which furnished the money that was paid for such shares, and they were immediately transferred to the Standard Oil Company by the defendant. The plaintiff held the said office, his compensation having been gradually increased by the Standard Oil Company to $15,000 a year, until January 15, 1883, when that company which still held that amount of stock, having decided to reduce the expenses and to change the management, a new board of directors was chosen, not embracing the plaintiff, and another person, who agreed to serve without salary, was elected vice-president in his place. At the stockholders' meeting at which the new board of directors was chosen the stock belonging to the Standard Oil Company was voted upon by trustees who then held it for that company, the defendant not being one of them. To the consideration of $137,500 expressed in the conveyance above mentioned, Messrs. Archbold and Vilas, two of the officers of the Standard Oil Company, who took part in negotiating the arrangement with C. West & Sons, agreed, on behalf of their company, to add $12,500, bringing up the consideration paid to C. West & Sons to the sum of $150,000 ; which agreement was carried out.

All the obligations ever entered into by the Baltimore United Oil Company, or by the Standard Oil Company, with the plaintiff or with the firm of C. West & Sons, have been fully complied with. This suit is not brought against either of those companies, nor is it brought by C. West & Sons, but by the plaintiff individually against the defendant individually. The instrument of conveyance says nothing about any office or salary for the plaintiff in the Baltimore United Oil Company. The plaintiff knew, prior to the consummation of the sale by C. West & Sons, that the defendant was acting in

the negotiations as the agent of the Standard Oil Company, and knew also, prior to the organization of the Baltimore United Oil Company, that the control of it, and the disposition of its offices, rested with the Standard Oil Company, and knew that the defendant represented that company, in subscribing, as trustee, for the 5059 shares of stock. He admits, in his testimony, that he believed that the defendant was acting for the Standard Oil Company in the transaction which resulted in the purchase from C. West & Sons, and in the agreement alleged to have been made. The case claimed by the plaintiff is that, in addition to the money consideration for the sale of the property, there was, under the circumstances above mentioned, a further consideration in the individual promise of the defendant to the effect alleged. The defendant denies the existence in fact of any such agreement on his part.

The plaintiff prayed the court to give to the jury the following instructions, each of which was refused, and the plaintiff excepted: 1. "Although the jury may find, from the evidence, that, in negotiating with Messrs. C. West & Sons for the transfer of their property and business to the Baltimore United Oil Company of Baltimore County, the defendant acted as the agent of the Standard Oil Company and was known to the plaintiff to be so acting, yet if the jury believe that the defendant was himself largely interested in the Standard Oil Company as a stockholder, and in the organization of the Baltimore United Oil Company as a means of enlarging its business and profits and promoting his own consequent interest, and believed it necessary or important to the successful organization of the Baltimore United Oil Company and the promotion of his own interests, that Messrs. C. West & Sons should sell to it their property and business and withdraw from competition with said company, and, so believing and in order to induce the plaintiff to consent to such sale and withdrawal, the defendant made with the plaintiff, on his own individual behalf, as the plaintiff has testified, the contract to which likewise the plaintiff has testified, then the defendant's agency of the Standard Oil Company and plaintiff's knowledge of it,

as hereinbefore stated, are no bar to plaintiff's recovery in this action." 2. "If the jury believe, from the evidence, that the defendant was himself largely interested in the Standard Oil Company, as a stockholder, and in the organization of the Baltimore United Oil Company of Baltimore County as a means of enlarging its business and profits and promoting his own consequent interests, and believed it necessary or important to the successful organization of the Baltimore United Oil Company and the promotion of his own interests, that Messrs. C. West & Sons should sell to it their property and business and withdraw from competition with said company, and that the plaintiff was unwilling to unite with his copartners in the sale and transfer of their said property and business to the said company, and the defendant, to induce the plaintiff to unite with his copartners in selling and transferring their said business and property to the said company, contracted and agreed with the plaintiff individually, that, if he would so unite in said sale and transfer, he should have a permanent position in said company, as testified to by the plaintiff, and that, by reason of said contract and promise and relying thereon, the plaintiff did, with the knowledge and consent of his copartners as to said contract and agreement made with the plaintiff individually, unite with his copartners in the sale and transfer of the said property and business, and did withdraw said business from competition with the said company; and shall further find, that the defendant, in pursuance of said contract with the plaintiff, procured the appointment of the plaintiff to the position of vice-president of the said company, and that the plaintiff accepted the same in accordance with said contract, and entered upon his duties as such officer, and continued in the discharge of the same for the term of five years, and until he was removed therefrom, and that such removal was made at the instance of or by the procurement of the defendant, without cause; and shall further find, that the plaintiff was willing, and tendered himself willing, to fulfil the duties of the said office and to continue permanently to do so, then their verdict must be for the plaintiff, for so much as they may find he has been damaged by the failure of

the defendant to comply with his said promise and agreement."

The court instructed the jury as follows : " If they find that the alleged contract between the plaintiff and the defendant, that the said plaintiff should have permanent employment as an officer of the Baltimore United Oil Company, at a salary of not less than $5000 a year, or as much as any other officer of said company received, was made in contemplation that the defendant was to be an officer of said company and to control a majority of its stock, and that, by the use of his official position and of the control of said ownership of stock, he was to retain said plaintiff in office and fix his salary, as admitted by the said plaintiff, then their verdict must be for the defendant upon the issues joined in this case." The plaintiff excepted to such instruction.

That instruction was based upon the view that, on the facts stated in it, the alleged contract was void as against public policy. On this point the court said : " There is no allegation or proof that there was at any time such a contract for permanent employment directly with the company, or that the existence of such a contract with defendant was known to all the stockholders of the company ; so that it resulted, if the contract be upheld, that whenever the question of retaining the plaintiff in the company's service at $5000 a year came to be voted on, the defendant's vote was to be influenced by the fact that he was to be liable to the plaintiff in large damages unless the company retained him. Either the company must pay him $5000 a year, or the defendant must make it good to him out of his own pocket. This state of facts serves clearly to bring the case within the principle of the ruling in *Fuller* v. *Dame*, 18 Pick. 472, and *Guernsey* v. *Cook*, 120 Mass. 501, that is to say, it was a contract the purpose and effect of which was to influence the defendant as a stockholder and officer of the company, ' in the decision of a question affecting the private rights of others, by considerations foreign to those rights,' and the defendant, by the contract, was placed under direct and very powerful ' inducement to disregard his duties to other members of the corporation, who had a right to

demand his disinterested action in the selection of suitable officers.' He was to be in a relation of trust and confidence, which would require him to look only to the best interests of the whole, uninfluenced by private contracts. We think this salutary rule is applicable in this case, notwithstanding the alleged contract was not corruptly made for private gain on the part of the defendant. There were other stockholders in the company. The defendant and the Standard Oil Company, for whose benefit it is alleged the contract was made, were not all the stockholders, and it seems to us that it was certainly the right of those other stockholders to have the defendant's judgment, as an officer of the company, exercised with a sole regard to the interests of the company."

The court also instructed the jury as follows: "Even if they find that the defendant verbally promised the plaintiff, as part of the consideration for the execution by him of the contract offered in evidence, dated December 15, 1877, that plaintiff should have permanent employment as an officer of the United Oil Company of Baltimore, at a salary of not less than $5000 a year, or as much as any other officer of said company, and that plaintiff agreed that he would accept such employment and serve said company on those terms, the plaintiff cannot recover on such verbal contract and their verdict must be for the defendant." The plaintiff excepted to that instruction.

The court also instructed the jury as follows: "The plaintiff has offered no evidence legally sufficient to sustain the allegations contained in his amended declaration, and is not entitled to recover in this action." The plaintiff excepted to that instruction, the court having remarked in regard to it: "The alleged contract being, for the reasons we have already stated, presumably void on grounds of public policy, there must be affirmative proof to sustain the allegation of the amendment that the defendant 'was and continued able, lawfully and properly, and to the interest and advantage of said company, and with and by its full consent and approval and that of its stockholders, to retain the plaintiff in the employment of said company.' We do not find any evidence to this

·effect which, in our judgment, could be properly submitted to the jury."

*Mr. S. T. Wallis* and *Mr. E. Calvin Williams* for plaintiff in error.

In its reasoning, sustaining the first prayer of the defendant in error, the court held that the alleged contract was "presumably against public policy." The prayer itself bases the invalidity of the contract exclusively upon the hypothesis that it was made in contemplation that the defendant "was to be an officer of the Baltimore United Oil Company, and to control a majority of its stock, and that by the use of his official position and of the control of said ownership he was to retain the plaintiff in office and fix his salary." It will be observed that the prayer does not require the jury to find that the agreement was secret, corrupt or collusive, or that the defendant was to exercise his control, or use his position, in carrying out the contract, without the knowledge of his co-stockholders, or against, or without reference to their interests, or those of the corporation. It is respectfully submitted that the proposition thus stated cannot be maintained. The court rests its opinion in favor of the prayer, upon the two cases of *Fuller* v. *Dame*, 18 Pick. 472, and *Guernsey* v. *Cook*, 120 Mass. 501, neither of which is believed to justify the conclusion drawn from them.

In *Fuller* v. *Dame*, the plaintiff, Dame, who was the owner of a large tract of waste land, was desirous to enhance the value of his property, by having a principal place of deposit of a certain railway located at a particular point. To this end it was necessary to form an association, which would furnish the railroad company with a quantity of land and pay it a large sum of money to induce it to make the location desired, and this new corporation was to purchase Dame's property as joint stock. Dame accordingly agreed with Fuller, that the latter should aid him in getting up the proposed company and in causing the railroad corporation in question to fix its terminals and its principal place of deposit at the point where

Dame desired to have them. In consideration of this service to be rendered to Dame, he executed to Fuller his note for $9600 and placed it in "certain parties' hands" to be delivered to Fuller so soon as the terms of the agreement should be complied with as to the location of the railroad depot. This was consummated, and the note having been handed to Fuller, was the cause of action sued on. Fuller, at the time of the contract, was a stockholder of the railroad company concerned and was also a member of the legislature, and took stock in the new company on its incorporation. He was likewise himself largely interested in adjacent land, which was benefited by the railroad location provided for, and sold it for a great advance in consequence.

The court held the contract void, as a secret arrangement by which a large sum of money was to be paid to a stockholder and influential citizen, for his own use, on condition that he would use his influence to secure such action on the part of his corporation as would promote the private interests of a party who was to pay him, and his own, instead of the interests of the public and the railroad company, which were alone to be consulted in the location of the proposed depot. The court held the transaction an attempt to create and exert an "undue influence," with "all the injurious effects of a fraud upon the public."

In *Guernsey* v. *Cook*, two shareholders of a corporation, in consideration of A's agreeing to purchase a part of their stock at a price named, secretly contracted to procure for A the treasurership of the corporation, and secure to him, also, a sum named as his annual salary. In case of his removal, they were to buy the stock back from him at par. The court held the contract void, as contrary to public policy and as a fraud on the other stockholders, who were entitled to a disinterested exercise of judgment by their associates in regard to the selection of officers, "uninfluenced by private gain." In the absence of proof that the transaction was not for the private benefit of the contracting shareholders, or that it was consented to by the other members of the corporation, the contract could not be enforced.

The propriety of these decisions is not, for a moment, questioned — their applicability to the case at bar is, however, earnestly disputed.

The distinction between this case and *Dame* v. *Fuller* is believed to be manifest from the statement of the facts on which the Massachusetts decision was predicated. The latter belongs to a well-defined class of cases, in which a party occupying a public, or fiduciary, or quasi fiduciary position, is not permitted to sell or trade away the performance of his duties, for money or other private and secret advantage to himself. The case is rightly classified, with others, by Mr. Greenhood, under the head of "Private Dishonesty" as well as "Public Policy." Greenhood on Public Policy, 138, 139; *Woodstock Co.* v. *Richmond Co.*, 129 U. S. 643, 659, 662.

In *Guernsey* v. *Cook*, the transaction was simply the secret sale of a corporate office and its emoluments by stockholders in consideration of money to be paid to them by the proper officer for their stock. It was a secret sale of their votes, pure and simple, and it is part of the case that the corrupt bargain was set forth in terms in the agreement.

In the case at bar there is no pretence of any such facts or circumstances as are the basis of these decisions. There was nothing secret, whatever, about the appointment of West or the intention to appoint him. On the contrary, it was the declared purpose of the Standard Oil Company, in the formation of the United Oil Company, to give employment in the service of that company to all the Baltimore refiners who sold out to it and took stock in it, and all of them, as Camden states, "received positions of one kind or another as officers of the company." There was no element in the contract, nor in the circumstances surrounding and relating to it which brought it within the widest reach of the principle of public policy enforced in those cases.

It is scarcely necessary, though it may be permitted to add, that this court has always adhered to the doctrine that when a contract is capable of two constructions, the one lawful and the other unlawful, the former must be adopted. *Hobbs* v.

*McLean,* 117 U. S. 569–576; *United States* v. *Central Pacific Railroad,* 118 U. S. 235, 240.

This rule, enforced in the case of *Oregon Steam Nav. Co.* v. *Winsor,* 20 Wall. 64, 70; where a question of public policy arose, is fully recognized by the Supreme Court of Massachusetts in *Guernsey* v. *Cook.* See, also, Greenhood on Public Policy, Rule 99, p. 123, and cases cited.

The defence of public policy set up by a party to a contract which, as between the parties, is fair and honest, is characterized by the Master of the Rolls in a recent case, *Swaine* v. *Wilson,* as a "mean defence," and Lord Justice Lindley repeats that it is "not a creditable defence," though, as he adds, "the court must consider it, and, if well founded in point of law, must give effect to it." This court, with all others, has been compelled to enforce the latter rule, but never except where there was no alternative. It has never departed from the principle laid down in *Railroad Co.* v. *Richmond,* 19 Wall. 584, 590, where it classes among matters of "the highest moment and importance to the public welfare," even where public policy is in question, "the observance of good faith among parties and the upholding of private contracts and enforcing their obligations." And see, pointedly, to the same effect, the striking language of the late Sir George Jessel, in *Printing Co.* v. *Sampson,* L. R. 19 Eq., 462.

If we have shown that the court below erred in granting defendant's first prayer, we submit that the theory on which his seventh prayer was granted is equally unsound. Assuming that the contract set up was presumably void, the court held that the case could not be maintained without "affirmative proof" of certain averments in the amendment of the declaration, to remove that presumption. Their Honors then went on to determine that they found no evidence to that effect which could properly be submitted to the jury and they consequently granted the prayer.

The prayer itself is manifestly bad, it is submitted, on its face, because instead of assuming that there was no legally sufficient evidence *in the case* to maintain the averments in

question, it confined itself exclusively to evidence *offered by the plaintiff*, excluding altogether from the jury such deductions as they might legitimately draw from the defendant's own testimony and his other proof on which the plaintiff might and would have relied with great confidence.

But even if the prayer was not thus fatally objectionable it was otherwise inadmissible. It will be observed that the court's ruling involved the decision of two points — 1st, that the contract was *prima facie* void, and 2d, that *because of this* and only because of it, the averments of the amendment were required to be established by affirmative proof. "Affirmative proof" is, in itself, a misleading phrase; for, if it means to convey the idea that any legally competent evidence whatsoever from which the jury might reasonably find the truth of the averments in question would not suffice to maintain them, it is believed to be inconsistent with the fixed rules of evidence. But, be that as it may, the necessity of proving those averments is made by the court to depend upon the previous ruling, that the contract was at least *prima facie* void, and the supposed necessity of the proof, of course, falls to the ground if the contract "presumably" labored under no such infirmity.

It is submitted that there was legally competent evidence to go to the jury, upon the issue of the amended declaration that the holders of stock other than that represented by Camden would have consented to and approved the retention of West, if Camden had urged, instead of opposing it, and that the Standard Oil Company would have done the same thing.

*Mr. Thomas W. Hall* and *Mr. Charles Marshall* for defendant in error.

MR. JUSTICE BLATCHFORD, having stated the case as above reported, delivered the opinion of the court.

The first instruction virtually took the case from the jury, although it appears that, on a prayer by the defendant to the

court to instruct the jury that the plaintiff had offered no evidence legally sufficient to entitle him to recover, and that their verdict must be for the defendant, the court refused to grant that prayer.

We think that under no circumstances could the plaintiff recover in this action, for the reason that the alleged contract was void as against public policy, and that the first instruction to the jury was correct. From the plaintiff's own testimony it appears that his only reliance was on the use of the defendant's influence as an officer of the Baltimore United Oil Company, and on his control over the stock in that company held by the Standard Oil Company. The plaintiff says of the defendant: "He was to be president of the company, and I supposed he would remain there and continue me and keep me in the position as vice-president and general manager. If he was to be president and hold five-sixths of the stock and continue to hold it, it was a surety that I should remain in the position."

The agreement alleged to have been made was one on the part of the defendant whereby he might be required to act contrary to the duty which, as an officer of the Baltimore United Oil Company, he owed to that company and to the stockholders other than the plaintiff. The same rule which is applicable to the case of a public office applies to the present case, although it does not appear that the defendant was to receive direct personal pecuniary compensation or gain for what he was to do. The plaintiff, on his own showing, dealt with the defendant in reference to the fiduciary relation which the latter bore to the stockholders, both of the Standard Oil Company and of the Baltimore United Oil Company. The agreement alleged was an agreement which bound the defendant as to his future action as a director of the Baltimore United Oil Company, and an agreement to keep the plaintiff permanently in the position of vice-president of that company, irrespective of its interests. It amounted to a stipulation on the part of the defendant that no contingency should happen which should require a change of management and a reduction of expenses.

The principle involved is well settled in regard to public employments. *Meguire* v. *Corwine*, 101 U. S. 108, 111; *Oscanyan* v. *Arms Co.*, 103 U. S. 261, 272, 273. The same doctrine has been applied to the directors of a private corporation, charged with duties of a fiduciary character, to private parties, on the view that it is public policy to secure fidelity in the discharge of such duties. *Wardell* v. *Railroad Co.*, 103 U. S. 651, 658 ; *Woodstock Iron Co.* v. *Extension Co.*, 129 U. S. 643, and cases there cited, especially *Fuller* v. *Dame*, 18 Pick. 472, 483. See, also, *Guernsey* v. *Cook*, 120 Mass. 501 ; and *Woodruff* v. *Wentworth*, 133 Mass. 309, 314.

We think this principle is equally applicable, on the ground of public policy, although there was not to be any direct private gain to the defendant ; for, as was said by the Circuit Court in this case, it was the right of the other stockholders in the Baltimore United Oil Company "to have the defendant's judgment, as an officer of the company, exercised with a sole regard to the interests of the company." A personal liability for damages on the part of the defendant, in case the plaintiff should be removed after an agreement of the character alleged, was calculated to be a strong incentive to the defendant to act contrary to the true interests of the company and of its other stockholders. *Bliss* v. *Matteson*, 45 N. Y. 22 ; 1 Morawetz Corp. §§ 516, 519.

These views cover also the last instruction to the jury ; and it becomes unnecessary to examine the question raised as to the second instruction, which was to the effect that, as the alleged contract was not in writing, the plaintiff could not recover upon it, because it was invalid under the fifth clause of the fourth section of the statute of frauds of Maryland, as being an agreement not to be performed within the space of one year from the making thereof ; for, even though that might have been an erroneous instruction, it did no harm to the plaintiff, because he could not recover in any event. *Deery* v. *Cray*, 5 Wall. 795, 807 ; *The Schools* v. *Risley*, 10 Wall. 91, 115 ; *Deery* v. *Cray*, 10 Wall. 263, 272; *Brobst* v. *Brock*, 10 Wall. 519, 528 ; *Barth* v. *Clise*, 12 Wall. 400, 403 ; *Tweed's Case*, 16 Wall. 504, 517; *Walbrun*

522 OCTOBER TERM, 1889.

v. *Babbitt*, 16 Wall. 577, 580, 581; *Decatur Bank* v. *St. Louis Bank*, 21 Wall. 294, 301; *McLemore* v. *Louisiana State Bank*, 91 U. S. 27, 28; *Mobile & Montgomery R'y. Co.* v. *Jurey*, 111 U. S. 584, 593; *Lancaster* v. *Collins*, 115 U. S. 222, 227, and cases there cited; *Evans* v. *Pike*, 118 U. S. 241, 250.

*Judgment affirmed.*