BRISTOL et al. v. SCRANTON et al.

(Circuit Court of Appeals, Third Circuit. September 14, 1894.)

CORPORATIONS—CONSOLIDATION—PERSONAL AGREEMENT OF OFFICERS—LIABILITY TO STOCKHOLDERS.

Where the president of a corporation, in conducting a consolidation with another corporation, fully protects the interests of his corporation, the latter is not entitled to the consideration coming to him for his personal agreement with the other corporation that he would not, for a number of years, engage in the business conducted by such corporations,— this being insisted on by the other corporation as a condition precedent to consolidation,—his interests not being thereby rendered antagonistic to those of his corporation.

Appeal from the Circuit Court of the United States for the Western District of Pennsylvania.

Suit by Louis H. Bristol and others against William W. Scranton and another, for an accounting. From a decree for defendants (57 Fed. 70), plaintiffs appeal. Affirmed.

Henry Stoddard, Samuel Dickson, and Richard C. Dale, for appellants.

D. T. Watson and John McClave, for appellees.

Before DALLAS, Circuit Judge, and BUTLER and GREEN, District Judges.

GREEN, District Judge. The bill of complaint in this cause was filed by Louis H. Bristol and others, stockholders of the Scranton Steel Company, a corporation organized under the laws of Pennsylvania, and doing business at Scranton in said state, against William Walker Scranton and his brother Walter Scranton, who were respectively the president and vice president of the said steel company, to compel them to transfer and assign to the Scranton Steel Company, for its benefit and behoof, certain bonds or money obligations made and executed by another Pennsylvania corporation, the Lackawanna Iron & Steel Company, and by it delivered to the said defendants under these circumstances, as appear from the proofs in the case: The Scranton Steel Company and the Lackawanna Iron & Coal Company were both engaged in the manufacture of steel rails at Scranton, Pa., and had been for years, and were at the date of this transaction, engaged in active, if not hostile, competition, possibly to the financial injury of both. Certain gentlemen interested in the Lackawanna Company determined, if possible, to harmonize these antagonistic interests, and conceived the plan to consolidate into a new corporation, to be known as the Lackawanna Iron & Steel Company, the rival corporations. Negotiations looking to this end were thereupon opened by them with the defendants, who were the representative officers of the Scranton Company, which were carried on with varying success for some time. At

last, however, in January, 1891, after careful consideration and thorough discussion of the scheme of consolidation by the parties interested, it was finally agreed to; and a formal agreement in writing, embracing in detail the terms of the merger and union, was lawfully executed by both of the contracting parties. By it the business interests and plant of the Scranton Steel Company and of the Lackawanna Iron & Coal Company were merged and consolidated, and transferred to a new corporation, styled the Lackawanna Iron & Steel Company, which became in fact the successor, in all things, of the two consolidating corporations. Simultaneously with the consummation and execution of this contract of consolidation, another agreement was entered into by the Lackawanna Iron & Coal Company and by these defendants, wherein it was covenanted and agreed as follows:

"Article of agreement made this ninth day of January, in the year one thousand eight hundred and ninety-one, between the Lackawanna Iron and Coal Company, a corporation of the state of Pennsylvania, party of the first part, and William W. Scranton, in said state, and Walter Scranton, of East Orange, in the county of Essex and state of New Jersey, parties of the second part. Whereas, with the approval and consent of the parties of the second part, the party of the first part has entered into a certain contract with the Scranton Steel Company for a consolidation of their manufacturing industries, bearing even date herewith: Now, therefore, in consideration of the making and execution of said contract, and of these presents and the covenants herein contained, the parties hereto have agreed to and with each other as follows: First. That, upon the complete execution of said contract between the Lackawanna Iron and Coal Company and the Scranton Steel Company, the party of the first part will assign, transfer, and deliver to the parties of the second part $350,000 of the mortgage bonds of the Lackawanna Iron and Steel Company, described and provided for in said contract. Second. And in consideration thereof the said parties of the second part agree that they will not, nor will either of them, engage, directly or indirectly, in the manufacture of steel in any new competing works not now existing in any of the northern states of the United States, including Maryland, Virginia, and West Virginia, for the term of ten years from and after the complete execution of said contract; that they will at once procure and deliver to said iron company the assent of the Scranton Gas and Water Company to the assignment of the contracts with that company specified and described in said contract between the Lackawanna Iron and Coal Company and the Scranton Steel Company. Third. That this contract shall be binding upon, and inure to the benefit of, the successors, executors, administrators, and assigns of each of the parties hereto."

This agreement has been fully carried out in all its provisions by the contracting parties, and it is with these bonds, so delivered to the defendants for and upon the consideration in this agreement expressed, that this bill of complaint concerns itself. Quoting from it, its most material allegations, after setting forth the proposed scheme of consolidation, are as follows:

"And your orators further show that as part and parcel of the said arrangement by which the consolidation of the business interests and plants of said two corporations was to be effected, and the plant of said Scranton Steel Company was to be transferred to a new and single corporation, known as the Lackawanna Iron and Steel Company, said William Walker Scranton and Walter Scranton, while acting in said negotiations for and in behalf of said Scranton Steel Company, and as the directors and agents thereof, in violation of the duty which, as said directors and agents, they owed to said Scranton Steel Company and to the stockholders thereof, including your orators, conspiring and confederating together to receive for themselves large sums of

money on securities or bonds, through and by means of the sale, conveyance, and transfer of substantially all the plant and property of said Scranton Steel Company to said proposed new corporation, secretly, and without the knowledge, assent; or concurrence of the other stockholders of said Scranton Steel Company, or any of them, stipulated that the sum of three hundred and fifty thousand dollars in bonds of said new company, secured upon the property of said new company, should, upon the consummation of said consolidation, be paid to them personally and individually, and for their own personal use and benefit, by the Lackawanna Iron and Coal Company. And your orators allege that the obtaining and procurement of said bonds by the said William Walker Scranton and Walter Scranton, for their personal use, benefit, and behoof, was in fraud of the rights of said Scranton Steel Company and of your orators, as stockholders thereof, and that in truth and in fact said bonds were in substance part and. parcel of the consideration paid by the Lackawanna Iron and Coal Company for the transfer to said new company of the manufacturing plant of said Scranton Steel Company, pursuant to the terms of said written agreement, and that said bonds belong, in equity and good conscience, not to said William Walker Scranton and Walter Scranton, but to the said Scranton Steel Company and to the stockholders thereof, ratably, in proportion to their several holdings of the stock of that company."

Then, after stating that the plaintiffs are informed that the Scrantons allege that the said securities were delivered to and received by them in consideration, upon their part, not to engage in business individually, or as officers of any other corporation, in competition with the purchaser, the bill declares:

"But your orators charge and aver that because and by virtue of the relation which the defendants then held to said Scranton Steel Company, of which they were then officers and agents, they were disqualified and prevented from taking or holding such personal benefit or advantage, and that the securities and bonds so received did in fact constitute a part of an entire consideration for the property and assets of said Scranton Steel Company conveyed as aforesaid, and it was the duty of the defendants to turn over and account for the same, and that in fact said securities were given and received by the defendants because they were officers and agents as aforesaid of said Scranton Steel Company."

The defendants, in their answer, while admitting the receipt of the bonds, deny in detail these allegations and charges, and thus is raised the issue in the case.

A mass of testimony has been taken. Fortunately, it is not contradictory in its material points, or, at least, if apparently contradictory, it is easily reconcilable without questioning the veracity of the witnesses. It was most thoroughly considered and weighed in the court below; and as we have reached, upon the same grounds and for the same reasons, the same conclusion as that learned court did, it would be useless repetition to cite the testimony at length. Suffice it to say we think the evidence shows conclusively that, in all things pertaining to the consolidation of these corporations, the defendants never once subordinated the interests of the corporation of which they were the representatives to their own personal interests, or for their own personal behoof. On the contrary, it is quite apparent that William Walker Scranton was, up to the very last, consistently and courageously asserting and insisting upon the rights of his corporation in the premises, and compelling their recognition and admission, although individually he was not especially in harmony with the proposed scheme of consolidation, not approving of its terms, and in very truth was striving his utmost to do away

with what might have seemed the wisdom and necessity of the act, by attempts to insure otherwise the financial safety of his corporation, and by other proposed business connections, directly antagonistic to the idea of consolidation.  In our opinion the transaction, as consummated, so far as the consolidation of these two companies is concerned, is not tainted by a scintilla of fraud on the part of the defendants.  It was conducted openly and fairly; was brought in its earlier and later stages to the knowledge of a very large number, if not of all, the stockholders interested, who were represented by the defendants; and the terms of the consolidation, as finally agreed upon, when submitted to the stockholders of the Scranton Company, including the complainants, was approved, not only with entire unanimity, but, as well, as a great "triumph."   On this point of the case, we accept and paraphrase the conclusion of the court below, that the contract of consolidation was conceived in integrity of purpose, was born of good faith, and was indelibly marked with the impress of honor and fair dealing.

But it is further contended on the part of the appellants that, admitting the transaction disclosed no actual fraud on the part of the defendants, yet the relation which they sustained to the Scranton Steel Company was of such a character that it forbade them to make a covenant, growing out of the main transaction, which would inure profitably to them personally, and that if such covenant were made, although made in good faith, the beneficial results must be given and appropriated to their principal, the Scranton Steel Company, for its sole benefit.  It was ably argued on the part of the appellants that the policy of the law will not permit one party to a contract to agree to pay to the confidential agent of the other contracting party a personal compensation for effectuating the contract, and that the case at bar fell directly within the ban of this principle.   Undoubtedly, it is a rule of the broadest application in equity that no one who has fiduciary duties to discharge shall be permitted to enter into contracts or engagements, in which he has a personal interest, which actually do conflict or may conflict with the interest which he represents, and which he is bound to protect.   To uphold such proceedings,—to justify such conduct,—would be contrary to public policy.   The law does not permit fiduciary agents to subject themselves to temptation to serve their own interests in preference to those of their principals.   An agent's interest and an agent's duty must be coterminous and harmonious.   These principles are perfectly well settled. If they ruled this case there would be—could be—no defense.   But the answer to this contention of the appellants is to be found in the necessary lack of application of the principles stated to the facts of the case.   The evidence makes it very clear that this personal contract of the defendants, so strenuously objected to by the appellants, was not based upon the successful accomplishment of the consolidation, nor did it spring from it.   It did not come in the character of payment or a reward, or a consideration to the Scrantons for successfully effecting the consolidation.   On the contrary, it was clearly a condition precedent to any consolidation at all.   The representatives of the Lackawanna Company in

fact utterly refused to consider consolidation, except upon the terms that the time, the ability, the business qualifications of the Scrantons should, for a term of years, belong to it. As a matter of experience the Lackawanna Company knew the disastrous effect of rivalry engineered by the defendants. Such rivalry must be surely and absolutely barred for a term, or a consolidation would be futile to accomplish the desired results. Hence it was made by their representatives a prerequisite to consolidation that by the obligation of a solemn covenant the Scrantons must contract to refrain from such rivalry. If such covenant were made, then the consolidation might follow. If not, then continued and bitter war. The principle of equity which is relied upon justifies itself on the ground that the agent's interest must in no wise or manner conflict with or antagonize, or at least be diverse from, the interest of his principal. His fidelity in the discharge of the duty cast upon him by the relationship assumed must not be weakened by the demand of a personal interest. But in the case at bar the interests of the Scranton Company were not only strongly asserted and fully protected by its chosen agents, these defendants, in the consolidation, but, as well, the assertion and protection were made possible, and only so, by the consent of the Scrantons to accept the bonds in question as compensation for their retirement from all rivalry with the proposed new corporation to be born of the consolidation. Had they refused to sell their time, their experience, their knowledge, their ability, the stockholders of the Scranton Company never would have had the opportunity to wire their congratulations to William Walker Scranton upon the successful achievement of the consolidation, and upon the great "triumph" which he had won for them. To quote from the exhaustive opinion of Judge Acheson in the court below:

"In no proper sense were the bonds in controversy a profit made out of the agency or fiduciary relationship which here existed. They were not a gratuity, nor were they paid to the Scrantons because of their fiduciary position. * * * The two contracts were distinct in parties, subject-matter, and consideration."

These conclusions, so tersely expressed, answer completely the contention of the appellants. We unhesitatingly concur in them. The result is that the judgment below is affirmed.