172

## HOPPER v. WESTERN TABLET & STATIONERY CORPORATION.
### No. 6251.

Circuit Court of Appeals, Sixth Circuit.
June 30, 1933.

Don Sharpe, of Kalamazoo, Mich. (Mason & Sharpe, of Kalamazoo, Mich., on the brief), for appellant.

H. G. Pickering, of New York City (Howard & Howard, of Kalamazoo, Mich., on the brief), for appellee.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

MOORMAN, Circuit Judge.

The appellant owned or controlled five paper companies, four of which were manufacturers of finished products from raw paper and were known as "converters." The fifth, the Hopper Paper Company, was engaged in the manufacture of raw paper which it sold to converters. In 1927 the four converter companies with three other like companies owned by other interests were merged into a new company, the appellee corporation. It was provided in the merger agreement that the good will of the constituent companies should be transferred to the new company. A part of this good will consisted of accounts with chain stores, called "syndicate business," which the appellant had obtained for his old companies through personal contacts with New York buyers. The plans for the merger contemplated that appellant would be employed by the new company as vice president and salesman for a period of five years. Pursuant to this latter understanding, a contract of employment was entered into February 9, 1927, in which it was agreed that for a period of ten years the appellant would not "directly or indirectly" be or become "interested [in] or act personally in connection with any firm, corporation, joint stock organization or other organization" engaged in competitive business with the new company. As, however, the appellant owned a majority of the stock of the Hopper Company, it was stipulated, at his suggestion, that his interests in that company should not be a breach of his agreement not to engage in a competitive business, but he agreed, in consideration thereof, that so long as he should own a majority interest in or be able to control that company, it would not directly or indirectly manufacture or sell the products manufactured and sold by the new company except ruled school paper, which it was then producing.

After the contract of employment had been in effect for about three years, the appellant severed his connection with the new company and sold his holdings therein to other stockholders. His reason for doing this, as he stated it to the purchasers of his stock, was that he was getting old and wished to retire. Immediately thereafter he organized, through his control of the Hopper Company, a new converter company, the Sangamon Company, which at once entered into the business of a paper converter. He also attempted to divert the syndicate business of the appellee to his new company, utilizing for that purpose the good will he had built up with the chain store buyers. His efforts being attended with some success, and it being apparent that he would continue them, the appellee instituted this proceeding to enjoin him from directly or indirectly engaging in the manufacture or sale of the products manufactured by it in violation of

the contract of February, 1927. Upon the hearing of the case the trial court granted the injunction prayed for, and this appeal followed.

The main contention of appellant is that the trial court erred in disregarding the corporate entity of the Hopper Company. We find difficulty in seeing the pertinency of the argument as applied to the decree, for although the court referred to the Hopper Company as a "tool of the defendant," that company was not a party to the suit, and the decree in no sense enjoins it from participating in the ownership of the Sangamon Company or performing any duty devolving upon it by virtue of its interest in that company. The full effect of the decree, it seems to us, is to enjoin the appellant from soliciting business for the Sangamon Company or otherwise personally engaging in the converting business. Nothing in the decree can be construed as prohibiting the Hopper Company from engaging in the converter business or as prohibiting the appellee from exercising his rights as a stockholder in that company or doing the things that other stockholders not actively employed in the business do. Thus interpreting the decree, the only question is whether the clause of the contract of employment, by which the appellant agreed not to engage in the manufacture or sale of products in competition with the appellee, is a binding and enforceable obligation.

There can be no doubt that there is a public policy which protects the stockholders of a corporation against the use by a director or officer of the corporation of his fiduciary relationship for private gain. Thus where a director of a company agreed with one of its officers that regardless of the interests of the company he would exercise his official power to retain the officer in his position, there was a plain derogation of the company's interests. West v. Camden, 135 U. S. 507, 10 S. Ct. 838, 34 L. Ed. 254. If the contract here in issue were of that character, there would be two public policies to be considered—that which forbids a director's use of his office for personal gain to the detriment of the other stockholders, and that which is concerned with fair and honest dealing among men and which does not permit them, except for compelling reasons, to repudiate their obligations fairly undertaken. This latter policy cannot be overlooked in determining the equitable rights of the parties to a contract where, as here, the only person seeking to avoid it is he who caused it to be executed and has been the recipient of its benefits. Swaine v. Wilson, 24 Q. B. Div. 252, 256; Diamond Match Co. v. Roeber, 106 N. Y. 473, 482, 483, 13 N. E. 419, 60 Am. Rep. 464; Hall Mfg. Co. v. Western Steel & Iron Works (C. C. A.) 227 F. 588, 593, L. R. A. 1916C, 620. We are not obliged, however, to balance these two public interests one against the other, for we observe nothing in the decree as interpreted above which prohibits the appellant from carrying out the normal duties of a stockholder or officer of the Hopper Company. The only inhibition against him is that he shall not personally engage in a competitive business, and this means that he shall not solicit business for himself or for any company, nor use the good will he built up when he was in control of the constituent companies to deprive the appellee of its business.

Although officers and directors of a corporation may not act in derogation of their fiduciary obligations, there is obviously left to them a wide field of individual activity. The restrictions upon their activities growing out of their fiduciary status extend only to such corporate interests as exist at the time or as may reasonably be expected in the development of the corporate business. Lagarde v. Anniston Lime & Stone Co., 126 Ala. 496, 28 So. 199; Carper v. Frost Oil Co., 72 Colo. 345, 211 P. 370; Thilco Timber Co. v. Sawyer, 236 Mich. 401, 210 N. W. 204; Young v. Columbia Oil Co., 110 W. Va. 364, 158 S. E. 678; Jasper v. Appalachian Gas Co., 152 Ky. 68, 153 S. W. 50, Ann. Cas. 1915B, 192; Bristol v. Scranton (C. C. A.) 63 F. 218. An application of this doctrine to the provision here in question relieves it, as enforced by the decree, of any taint of opposition to public policy. At the time the appellant entered into the contract, the Hopper Company was not engaged in the business of converting raw paper into the finished product. So far as is shown by the record, it was not contemplated by the management of that company that it would ever engage in such business. In that situation, the appellant undoubtedly could have gone into the converter business for himself without violating any duty which he owed the Hopper Company. If he could have done so, certainly he had the right to enter into a valid contract with some other company not to do so. In Lancaster Loose Leaf Tobacco Co. v. Robinson, 199 Ky. 313, 250 S. W. 997, the corporation was engaged in the tobacco business, and the president of the corporation engaged independently in a different

line of the same business. It was held that there were no reasons of public policy which prevented the president of the company from engaging in the new line of business without accounting to the corporation for his profits. The general principles of that decision are applicable here. The history of the business of the Hopper Company did not indicate that that company contemplated engaging in the production of the finished product from raw paper. The appellee was organized, not to compete with the Hopper Company, but to engage in another branch of the paper business—to manufacture a different product. The appellant, though an officer of the Hopper Company, could himself have lawfully engaged in the manufacture of this different product, and that being true, he had the right to enter into a valid contract with the appellee not to engage in it.

Aside from the views expressed above, the equitable considerations disclosed by the record point to but one solution of the controversy here presented. The appellant was the dominating influence in bringing about the merger that resulted in the creation of the appellee corporation. As a result of its formation he disposed of four companies for a consideration which he deemed ample. He became an officer of the new company and enjoyed a large salary for three years. The chief reason for taking over one of his companies was to obtain its good will as represented in its accounts with the chain stores. He endeavored to place the Hopper Company in the merger when it was formed. Being unsuccessful, he later attempted to force the appellee to purchase that company. His methods of coercion included threats of competition. Realizing as he evidently did that this and other methods to which he resorted would not accomplish his purpose, he sold his stock to other stockholders on the pretense that he wished to retire from business. The trial court found as a fact that this representation was insincere. It further found that be then contemplated organizing a converter company to compete with the appellee. He did organize one immediately and proceeded to solicit the syndicate business and to take other steps wholly inconsistent with the obligation he had assumed in his contract with the appellee. He thought and said that the appellee could not "afford the luxury of a law suit," and even if it could, that he had been "exceedingly careful to avoid placing" himself where he "could be attacked if the agreement were legal." His plan as thus formed and partially executed was to deprive the appellee of the benefits of its contract and to take from it the good will for which he had been paid. The decree below enjoins him from soliciting business for the Sangamon Company and from personally participating in the business of that company or any other company competing with the appellee beyond that of a stockholder or director not actively employed in the business. The principles of equity approve such a decree, and it is accordingly affirmed.