[File No. 6816.]

THEODORE H. LUEDKE, Respondent, v. VIOLA M. OLEEN, Executrix of the Last Will and Testament of J. A. Oleen, and as an Individual, Appellant.

(4 NW (2d) 201.)

**2**

Opinion filed May 25, 1942.

*Leigh J. Monson,* for appellant.
*E. J. McIlraith,* for respondent.

BURR, Ch. J.   In 1937 there was in existence in Minot, North Dakota, a benevolent society organized by J. A. Oleen, and known as the Minot Protective Association.   Mr. Oleen was the secretary-treasurer of the association, which was managed by a board of directors.

On July 22, 1937, a contract in writing, Exhibit B, was entered into between this board and J. A. Oleen, wherein the members of the board "do hereby contract and agree with the said J. A. Oleen that he may from and after this 22 day of July, 1937, retain for himself personally all monies received by the said Minot Protective Association from its members, namely, 100% of all dues, 100% of all membership fees, 100% of all reinstatement fees, and 10% of all monies received in response to notices of levy and assessment sent to members of the Society upon the death of any member or members therein, it being agreed by the

said J. A. Oleen that out of such monies so received by him he will pay all salaries and expenses of every name and nature in connection with the transaction of any and all business of the said Minot Protective Association including the monies paid to agents of the Association and including any and all expenses incidental to the operating and maintaining of an office or offices of the said Minot Protective Association, and in order to clothe the said J. A. Oleen with sufficient and proper authority to transact all business for said Association the undersigned Board of Directors hereby appoint him to be the General Agent of said Minot Protective Association and the Board of Directors thereof, giving him full Power of Attorney to do each and every act necessary to be done by said Minot Protective Association or said Board of Directors acting for and on its behalf."

On July 31, 1937, the Protective Association was incorporated under the provisions of chapter 145 of the Session Laws of 1937, and a certificate was issued by the Secretary of State, showing the incorporation of the Association under the name of "Minot Protective Association."

Apparently Mr. Oleen was interested in the organization of similar associations, and as he lived in Fargo, North Dakota, he employed the plaintiff to look after the business in Minot.   Mr. Oleen died in December, 1937, and almost immediately thereafter, the plaintiff was elected secretary-treasurer, taking over the operation of the society, apparently under this contract.

The defendant, Viola M. Oleen, is the widow of J. A. Oleen and executrix of his last will and testament.

It was the contention of Mrs. Oleen that the estate had such an interest in the Protective Association, because of its organization by her husband; and because of the terms and conditions set out in Exhibit B, she was entitled to the net proceeds of the association.   So she opened negotiations with the plaintiff with reference to these proceeds.   No agreement having been reached, the defendant appeared at Minot for the annual meeting of the association, which was to be held on February 8, 1938, claiming to have, through proxies from bona fide members, the right to control the proceedings of the annual meeting.   Negotiations between the plaintiff and the defendant being reopened, the parties entered into a contract in writing, dated February 8, 1938, reciting:

"Memorandum Agreement, Made and entered into this 8th day of February, 1938, by and between Theodore H. Luedke of Minot, North Dakota, party of the first part, and Viola M. Oleen, of Fargo, North Dakota, party of the second part, Witnesseth:

"That Whereas, J. A. Oleen, recently deceased, held a purported contract with the Minot Protective Association providing for the payment of the income of said Association, above death claims, to the said J. A. Oleen; and, was its Secretary Treasurer, and

"Whereas, the said J. A. Oleen, is now deceased, and Mrs. Viola M. Oleen is his widow, and executrix, and as such has all rights and property, contractual or otherwise which may have survived at the death of the said J. A. Oleen; and

"Whereas, the said Theodore H. Luedke is the present acting Secretary Treasurer, and has charge of the management and operation of said business, since the death of J. A. Oleen, and

"Whereas, the said Theodore H. Luedke is desirous of continuing in charge of said business as Secretary and Treasurer thereof and to have active charge of the management of said business subject to the conditions hereinafter mentioned, and

"Whereas, the said Theodore H. Luedke has acted as the agent of the said J. A. Oleen, now deceased, and his wife Ida has been employed in clerical capacity in the operation of said business, and

"Whereas, the said Mrs. Viola M. Oleen approves and consents to the selection of the said Theodore H. Luedke, as secretary-treasurer of said association,

"Now, Therefore, in consideration of the matters hereinbefore and hereafter recited, the said Theodore H. Luedke promises, covenants, and agrees with the said Viola M. Oleen, that, so long as he shall be the Secretary-Treasurer, and/or general manager in charge of said business of the Minot Protective Association, he will pay and said Association will pay to the said Viola M. Oleen, one half of the net profits of said business made and received by him, and by said Association, from its operations; The said Theodore H. Luedke further agrees with the said Viola M. Oleen, that, in arriving at the net profits of said business, the fixed expenses to be paid out of the gross profits is to consist of the following:   .   .   .

(Specifying them).

". . . It is further understood and agreed that, where applications are written by the said Theodore H. Luedke, instead of his being required to pay any part thereof, other than 25c per membership, which sum is sent to the Insurance Commissioner of North Dakota, he shall be entitled in lieu of travelling expense, to retain all of such initial membership fees, save and except the twenty-five cents per membership above expressly excepted.

"That all other receipts received are to be considered gross income.

"It is further understood and agreed that the said Theodore H. Luedke can continue to enter into contracts with solicitors and agents for the soliciting of new members, at three dollars per member, which shall be apportioned as follows: $2.50 to the solicitor or agent; twenty-five cents to the Association; and twenty-five cents to the Insurance Commissioner of North Dakota, as provided by law;

"It is further understood and agreed, that on membership dues paid by members subsequent to the initial membership fee, where an agent or solicitor other than party of the first part has obtained the membership, the said T. H. Luedke may pay to such solicitor or agent, fifty cents out of each $1.00 so received;

"It is further specifically understood and agreed, and the said Theodore H. Luedke agrees that, during the life of this contract, the fixed charges of expenses as herein enumerated, are not to be increased, except upon consultation with, and with the written authority of the said Viola M. Oleen; that any change in the operation of said business, or in its extension, or in the contracts which may be made with solicitors and agents, shall not be made without the express written consent of the said Viola M. Oleen. It is further understood and agreed that in the employment of doctors and lawyers, in connection with said business, the said Theodore H. Luedke will not incur unnecessary expenses and will not agree to the payment of fees in excess of fees usually charged for such service; that in the employment of attorneys, the employment and terms thereof, for extraordinary matters, shall be only upon the consent in writing of Viola M. Oleen;

"It is further understood and agreed that at the present time, additional office help is required for a day or two, per month, and sometimes

oftener, and that such additional help will be obtained and paid for, as expense, until such time as it becomes necessary to hire regular additional help, such as may be and shall be agreed on between the parties hereto.

"This contract shall not be construed as a waiver or relinquishment of rights contractual or otherwise, which have passed to party of the second part, under and by virtue of that purported contract had with Minot Protective Association, by J. A. Oleen, save and except insofar as the same is expressly qualified hereby.

"That, if during the life of this contract Viola M. Oleen should become deceased, the said Theodore H. Luedke covenants and agrees to carry out the terms thereof, with the estate and heirs of the said Viola M. Oleen.

"It is understood and agreed further, that the division of net profits shall be made on Jan. 10th, May 10th, and September 10th of each and every year.

"Parties agree that the party of the first part shall render statement and accounting of the business to party of the second part now, and as hereafter required."

On September 1, 1939, the parties entered into a supplemental contract, wherein they decided to make some changes in the terms of the first contract. It was agreed between the parties that the plaintiff was to remain as "the Secretary-Treasurer and/or General Manager and shall receive the expense assessments as are now provided by law . . . , pay to the said Viola M. Oleen her heirs or assigns, the sum of $400, making a total of $1,200 for the year 1940 and $1,200 for each and every year thereafter, . . ;" that if the plaintiff did not make his payments, the contract was to be null and void; and that the furniture and fixtures and machines used by the association in the conduct of its business were to be the joint property of the parties to the contract. There were other features which are not necessary to quote.

In June, 1940, plaintiff commenced an action to have said contracts rescinded and declared null and void. In his complaint he alleges that the contracts were entered into by him "upon the false and fraudulent representations of the defendant . . . that . . . J. A. Oleen, was . . . the owner of said Minot Protective Association

. . . and that the interest of said J. A. Oleen, descended to his heirs, and that the plaintiff, by making the payments called for in said contracts, would thereby be buying from said defendant executrix and heirs of said estate, all of the ownership of said corporation, and its tangible assets, and that he, the plaintiff, would thereby become the sole owner thereof; that, relying upon said false and fraudulent representations, and not otherwise, the plaintiff in good faith entered into the performance of the contracts hereinbefore set forth, and to this date has paid to the defendant, by virtue thereof, the sum of $3,018.71."

He further alleges that Oleen was not the owner and had no proprietary interest in the association; that he was only an employee; and that his heirs had no interest whatsoever in the corporation or its revenue; that the defendant knew this at the time the contracts were entered into; that the estate had no interest in the association or in its revenues; and that plaintiff signed the contracts and paid the money "because of said false and fraudulent representations, all of which were mistakes of law and fact of such a character as to wholly and completely invalidate and cancel said contracts." He further claimed that there was no consideration for the contracts, as the defendant had nothing to sell; and that he rescinded all of the terms and conditions as soon as he learned of the false and fraudulent representations, and of the fact that the defendant had no interest in the subject matter.

The defendant admits the execution of the two contracts; denies that she made any false or fraudulent representations; and alleges that the plaintiff knew all of the facts; that the plaintiff "knew of the money, time and effort, put into the organization of said Association by the said J. A. Oleen and that the said Luedke during at least a part of the time taken up in the operation of said association, was an employee of the said J. A. Oleen and paid by him for his services in helping to perfect the organization of said Association and that the said Plaintiff, Luedke, well knew that he, the said Luedke, had no money invested in said Association and that he, the said Luedke, also knew that the person organizing and financing a benevolent society such as the said Minot Protective Association, had a substantial financial and proprietary interest in such society and he well knew that the said J. A. Oleen has such substantial financial and proprietary interest . . . and that . . . Luedke

. . . acknowledged and respected the substantial financial and proprietary interest in said Association of the said J. A. Oleen and that it was not until after the death of the said J. A. Oleen that the said Plaintiff, Luedke, attempted to take possession of the management and operation and receipt of income of said Minot Protective Association in derogation of and opposition to the rights of the Defendant herein as the executrix of the estate of J. A. Oleen and his heir at law, and the Defendant further alleges that each and every payment of money made to her by the Plaintiff, Luedke, in consideration of the operation and management of the said Minot Protective Association by the said Luedke, was made with full and complete knowledge of all of the facts concerning the original organization and operation of said Association and the operation and management of said Association following the death of the said J. A. Oleen and the Defendant alleges that the Plaintiff is thereby estopped from applying to any Court of Equity for relief."

She further alleges the plaintiff, at the annual meeting to be held on February 8, 1938, knew that the defendant had a sufficient number of proxies to control the meeting and to elect a board of directors satisfactory to herself, which board would in turn elect a secretary for the association satisfactory to her; and that these contracts were entered into in consideration of the agreement on the part of the defendant to waive the right to vote her proxies; that she relied upon his promise of future loyalty and accepted his assurances so that she voted her proxies for a board of directors proposed by the plaintiff, and this board thereafter elected the plaintiff secretary of the association; and that thereafter the plaintiff managed the association under and by virtue of the contracts; and that she has the sum of $1,200 still due her from plaintiff, for which she asks judgment, and asks the plaintiff be required to fulfill his contracts.

The defendant set up a counterclaim, to which the plaintiff replied. A demurrer was interposed to the counterclaim, which was sustained by the trial court.

The trial court found that the defendant did not inherit or succeed to any proprietary interest in the association; that the contract that her husband had with the association was one of employment, which ter-

minated upon his death; that Oleen was only an employee of the association; that the association belonged to the members, and that as a promoter thereof, Oleen "had no equitable or other interest therein other than his contract of employment."

The court found and concluded "That the Minot Protective Association is controlled by the Board of Directors elected at the annual meeting by the membership thereof; that said contracts, exhibits '2' and '3,' were entered into under a mistake of fact and law between the parties in that the defendant and her agents falsely and fraudulently represented that defendant owned the Minot Protective Association, had a proprietary interest therein, and controlled the disposition of the expense fund; that there was no consideration whatsoever for said contracts and they are null and void and unenforceable; that said contracts are unlawful contracts made and entered into contrary to law and the articles of incorporation and the by-laws of said Minot Protective Association; that the expense fund of said Minot Protective Association under the law is a trust fund, to be administered only by the Board of Directors of the Minot Protective Association, and in accordance with the law in such case made and provided; that it cannot be the subject of a contract between the plaintiff and defendant, and cannot be used for other than corporation purposes under the direction and control of the Board of Directors of the Minot Protective Association; that any other use would be contrary to public policy; that plaintiff is not entitled to a return of the money paid to defendant."

Judgment was entered in accordance therewith, and the defendant appeals.

The trial court in an extensive memorandum decision shows that under the provisions of chapter 145 of the Session Laws of 1937, such an association as the Minot Protective Association was placed under the jurisdiction of the Commissioner of Insurance, and was made subject to all the laws, rules, and regulations applicable to insurance companies. He shows that the ownership of the corporation was in its membership, and that the law clearly eliminated the element of profit, saying, "Such organizations are for the mutual benefit of its members and not for the enrichment of any promoter. The Articles of Incorpo-

ration of the Minot Protective Association recognized this for article 8 reads:

" 'This corporation is not organized for profit and shall have no capital stock.' "

The memorandum opinion declares that despite the fact the association was incorporated under the provisions of chapter 145 of the Session Laws of 1937, "Mr. Oleen, apparently, intended to carry on into the new association the plans and methods and proprietary interest he may have had in the old," and that this is evidenced by the contract between him and the board of directors made on July 22, 1937; that the defendant apparently considered "she inherited the corporation and for that reason had absolute right to its control," and that these representations were made to the plaintiff; and under this belief, both the plaintiff and the defendant went out to secure proxies to control the directorship, and thereafter the contracts were entered into.

The evidence bears this out. The trial court shows that the defendant sincerely believed that she inherited the ownership of the corporation, and that the net proceeds belonged to her; and that the plaintiff, although he had worked for Mr. Oleen, was of the same opinion, so that there was a mistake both of law and fact as to the ownership of the corporation.

The trial court found that there was an agreement between the parties to exercise their rights or powers in the management of the corporation in such a way as to divert the trust funds from a legitimate purpose, and for the profit of one or both of the parties to the transaction; and that such an agreement was illegal and against public policy. In support thereof, the court cites Vol. 2, §§ 569, 570 of the American Law Inst., Restatement of the Law on Contracts.

The trial court, therefore, found that there was no consideration for these contracts; that they were against public policy; and that they should be cancelled. The trial court held further that the plaintiff was not entitled to the return of any moneys which he had paid. As the appeal does not involve this finding, we need not consider that feature.

It is clear from the facts that the defendant had nothing to sell. Her husband did not own the association; there is nothing to show he had any money coming to him from it; both parties appeared to proceed on

the theory that he owned it and had a proprietary interest therein which descended to his estate. It was because of this the contracts were entered into. Clearly, there was no consideration for the contracts.

The theory upon which the defendant proceeded to act seems to have been based upon the provisions of Exhibit B; that these provisions were continued in force after the association was incorporated, were binding upon the directors of the corporation and the corporation itself; that the plaintiff was well aware of all of these features, and, therefore, was not deceived. She also seems to place stress upon the claim that had it not been for the agreement represented by these contracts, she would have voted the proxies which she had in her possession, and would have obtained a board of directors that would have carried out in principle the agreement set out in Exhibit B.

The contracts were not made by the corporation. They were made by the secretary-treasurer of the corporation with a third party. The purpose was to so manage the affairs of the corporation and use the moneys which came to it so that benefit and profit would inure to the defendant. If we consider the transaction as an agreement by the plaintiff to the effect that if he were elected secretary-treasurer, he would pay over to the defendant part of the moneys that came to the corporation; or if we consider it a bargain on the part of the defendant to so refrain from using her voting power to the detriment of the plaintiff, both agreements would be illegal and against public policy. Both parties were dealing with the affairs of the corporation—one as an officer and the other as a shareholder, or in control of the rights of shareholders or members. The effect of the agreement was a bargain which would inure to the benefit of the defendant; a bargain where the personal advantage of the parties, distinct from the interests of the corporation, was the real motive. A member cannot agree to so use his voting powers as to benefit another party at the expense of the association of which he is a member, nor can the official bargain with a member so as to obtain an official appointment through the influence of the member, and use the trust funds to pay her for that purpose.

Such a protective association, under the provisions of chapter 145 of the Session Laws of 1937, is "An assessment benevolent society . . . which operates on the voluntary assessment or contribution

plan for the sole purpose of providing through assessments of its members for the payment of a death benefit to the beneficiary of a deceased member." Section 2.

The society must "maintain and keep separate two funds, viz: . An Expense Fund and a Mortuary Fund. The membership fee, not less than One Dollar ($1) and not more than Five Dollars ($5) may be used for expenses. The certificate of membership shall state the percentage of assessments, not exceeding ten per cent, that may be used for expenses. . . . No expenses may be paid from the Mortuary Fund." Section 13.

The number of assessments is limited by the terms of this section, depending upon the number of members, but not exceeding four expense fund assessments per year, and each of said assessments shall not exceed $1 per member.

Under the provisions of § 7 of the Act, assessments are to be levied to pay the death benefit to a beneficiary of a deceased member, and out of that assessment no more than 10 per cent can be deducted as allowance for expenses; and "In case the proceeds of one such post-mortem assessment is more than sufficient to pay the death claim for which the levy was made, the balance shall be placed in a mortuary fund and be applied toward payment of the next claim within the unit from which it arose. No assessment levy shall be made unless the balance in the mortuary fund is insufficient to pay a claim on which notice and proof of death has been received."

This does not mean that 10 per cent must be used for expenses. It is a limit on the amount of expense. The whole assessment goes into the mortuary fund, except as to the amount necessary for expense. The expense cannot exceed 10 per cent, but if there be a surplus on this 10 per cent, that surplus goes into the mortuary fund, to be used upon the payment of the next death loss. To divert the surplus of this 10 per cent expense account to the individual benefit of the parties in this action, to be divided as they contract, is using the funds of the association for private interests.

An examination of the contract made between the decedent Oleen and the company before it was incorporated shows that it gave to Oleen the complete control of all the funds. It is this contract which seems

to be the basis of the claim of the defendant that as heir and executrix, she succeeded to the interest of her husband.

The contract entered into between the parties to this action shows on its face that it was made in consideration that the defendant approved and consented to the election of the plaintiff as secretary-treasurer. The plaintiff as secretary-treasurer was to be governed entirely by the wishes and desires of the defendant. As long as he was to remain secretary-treasurer or general manager of the association, he was to pay, and the association was to pay, to the defendant one half of the net profits of the business; and a method was stated for arriving at the net profits. The fixed charges of the association were not to be increased until after the defendant was consulted and after she had given written authority to do so; nor was there to be any change in the operation of the business without her written consent. Not only this, but after her decease, this contract was to continue in force and effect with her estate.

Clearly, a person claiming to have control of the association, was making a deal with an officer of the association concerning the work of the association, its income and its management. "Officers of a corporation cannot, while acting in their fiduciary capacity, make an agreement with themselves individually and for their personal benefit." Jacobson v. Brooklyn Lumber Co., 184 NY 152, 76 NE 1075, 1076.

The defendant claimed to be the corporation, or to control it, and the secretary-treasurer as an officer was entering into an agreement with her for the personal benefit of each. The relation of the secretary-treasurer to the corporation is fiduciary, and he must act at all times in good faith and unselfishly toward the corporation. The directors also are in the same category. With the interests of the association involved, and particularly where the same is in conflict with the individual interests of the secretary-treasurer and the stockholder claiming to control the corporation, they are held strictly accountable for their actions. The whole transaction was a fraud upon the corporation, even though the parties thought they had a right to enter into it. See Billings v. Shaw, 209 NY 265, 282, 103 NE 142, 148.

As shown in West v. Camden, 135 US 507, 34 L ed 254, 10 S Ct 838, the contract with a person who holds a controlling interest in the company that a person should be permanently retained as an officer with a

certain salary is void as against public policy. The contract involved here was entered into between the defendant, claiming to have a controlling interest in the association, and an officer, so that the plaintiff should be permanently retained as an officer. The contract was to continue so long as he lived, for it was to be binding upon him on behalf of her estate in case she predeceased him. It is against public policy to permit the diversion of the trust funds of the corporation as contemplated in the contracts.

Even if the contract entered into between Oleen and the Protective Association on July 22, 1937, were such that the proceeds, after the payment of all debts and expenses, belonged to Oleen; nevertheless, that contract was not binding upon the corporation after it was incorporated under the provisions of chapter 145 of the Session Laws of 1937, which incorporation took place nine days after the contract was entered into. The moneys sought to be obtained in this suit are moneys which came to the association after its incorporation. Clearly, the parties had no authority to dispose of such funds. The trial court was right in holding that there was no consideration for the contracts, and that the trust funds could not be disposed of in such manner. The judgment is, therefore, affirmed.

CHRISTIANSON, MORRIS, BURKE, and NUESSLE, JJ., concur.