[No. 11515.  Department Two.  March 13, 1914.]

J. P. GLEASON, *Appellant,* v. MICHAEL EARLES, *Respondent.*[1]

CORPORATIONS—CONTROL—STOCK POOLING CONTRACT—REMEDIES—SPECIFIC PERFORMANCE. The courts will not specifically enforce a pooling contract to control the voting policy of a banking corporation, doing business subject to state regulations, when to do so against the will of one of the parties to it may take the corporation from the control of officers selected by the stockholders and vest it in officers selected by the parties to the contract, one of whom is coerced to act against his will; but the parties will be relegated to their remedy, if any, at law.

[1]Reported in 139 Pac. 213.

SPECIFIC PERFORMANCE—CONTRACTS SUBJECT TO—BREACH OF CON-
DITION.  Where part of plaintiff's stock in a banking corporation was
transferred to defendant under a pooling agreement with plaintiff,
which defendant repudiated, the court cannot, upon denying to plain-
tiff specific performance of the pooling agreement, decree a reconvey-
ance of the stock transferred to the defendant, in the absence of such
remedy provided in the contract; since, on breach of condition con-
cerning the transfer of personal property, the general rule relegates
the party to his remedy at law, unless the same is inadequate.

SAME.  In such a case, specific performance of the pooling con-
tract, in order that a minority stockholder may become a majority
stockholder, is not sufficient to show that the remedy at law for
breach of condition is inadequate.

Appeal from a judgment of the superior court for King
county, Albertson, J., entered May 12, 1913, dismissing an
action for specific performance, upon sustaining a demurrer
to the complaint.  Affirmed.

*Hughes, McMicken, Dovell & Ramsey*, for appellant.

*Kerr & McCord*, for respondent.

FULLERTON, J.—The appellant brought this action against
the respondent to compel the specific performance of a con-
tract, entered into between them, concerning the management
and control of certain shares of the capital stock of the Amer-
ican Savings Bank and Trust Company.  On filing his com-
plaint, the appellant applied for a temporary injunction,
and for the appointment of a trustee to take charge of the
stock in question pending a trial of the action.  This appli-
cation was resisted by the respondent and denied by the court.
Thereafter a demurrer was interposed and sustained to the
complaint, and the action dismissed.  This appeal is from the
order of the court denying the application, and from the
judgment of dismissal.

The contentions of the appellant can best be stated in his
own language, and we herewith set forth his complaint at
length:

"Comes now the plaintiff and complaining of the defendant
alleges:

"(1)   That on or about the 20th day of March, 1903, this plaintiff and defendant, together with one J. J. Haggerty, were the owners of certain shares of the capital stock of the American Savings Bank & Trust Company, a banking corporation organized and existing under and by virtue of the laws of the state of Washington and then and there doing a general banking and trust business in the city of Seattle, state of Washington, each being the owner of approximately one hundred seventy-four (174) shares of said capital stock; and the said plaintiff and defendant and the said J. J. Haggerty were at said time desirious of and contemplating the acquisition of additional shares of the capital stock of said American Savings Bank & Trust Company. Thereupon, and in consideration of the premises, the said plaintiff and the defendant and the said J. J. Haggerty did make and enter into a certain agreement with regard to the said capital stock then owned or thereafter to be acquired by them, and each of them, a copy of which said agreement is hereto attached, marked 'Exhibit A' and made a part of this complaint.

"(2)   In consideration of the making of said agreement so referred to as 'Exhibit A,' this plaintiff acquired additional shares of the capital stock of said American Savings Bank & Trust Company, so that plaintiff is now the owner and holder of five hundred eleven (511) shares of the capital stock of said corporation.

"(3)   Subsequent to the making of said agreement, the said J. J. Haggerty disposed of the capital stock of the said corporation then owned and held by him to one Bonnafield, and thereafter this plaintiff with the knowledge and consent of defendant purchased from said Bonnafield, from one Minehan, one Grant and one O'Brien 353 shares of the capital stock of said corporation at the price of $240 per share, which said shares were thereupon and thereafter held by the plaintiff subject to the terms of said agreement referred to as 'Exhibit A.' Thereafter the said defendant was desirous of acquiring 262 shares of the capital stock of said corporation so held by this plaintiff as aforesaid, and the plaintiff then and there transferred to the said defendant 262 shares of the capital stock of said corporation so acquired by him as aforesaid, at said price of $240 per share, with the express understanding and agreement that the same would be held by

the said defendant at all times subject to the terms and conditions of the agreement referred to as 'Exhibit A.'

"(4) Thereafter the said defendant acquired additional shares of the capital stock of said corporation so that he, the said defendant now holds seven hundred seventy-six (776) shares of the capital stock of said corporation.

"(5) Disregarding the provisions of said contract hereinbefore referred to as 'Exhibit A,' that the holdings of stock owned and controlled by the parties to said agreement should be voted together as if one holding in all matters pertaining to the voting, managing, controlling and officering the corporation, and that the entire holdings of stock owned and controlled by the plaintiff and defendant should be voted together upon all matters arising in the corporation wherein the stockholders are called upon to vote, the said defendant has refused to cooperate with the plaintiff in voting their joint holdings of stock at stockholders' meetings, or in any matter pertaining to the managing, controlling and officering of the corporation, and threatens to continue to do so. The defendant by reason of the fact that he has secured a voting alliance with other stockholders in said corporation and by reason of the further fact that he disregards the agreement hereinbefore referred to with this plaintiff, is able to and does control the said banking corporation.

"(6) At the time of making of said agreement said plaintiff was the manager and one of the directors of said banking corporation. The said defendant in combination with other stockholders as aforesaid and by disregarding the rights of said plaintiff under said contract, has attempted to remove the said plaintiff as manager and director of said banking corporation, and unless this defendant is enjoined by order of your Honorable Court from disregarding the rights of the said plaintiff under said contract, will remove the said plaintiff as manager and director of said banking corporation and deprive him of any voice in the management of the affairs thereof.

"(7) By disregarding the rights of the said plaintiff under said contract, and by voting the capital stock now held by him without regard to this plaintiff or the rights of said plaintiff under said contract, the said defendant has chosen and placed in control of the affairs of said corporation trustees and officers who are entirely subservient to him. The

said trustees and officers have by his direction and procurement denied to this plaintiff, though a director and officer of said banking corporation, access to the books and papers thereof, so that this plaintiff is unable to properly perform his duties and the duties imposed by law upon him as an officer and director of said banking corporation.

"(8)   The said J. J. Haggerty, having as aforesaid disposed of his interest in the capital stock of said corporation, has declined to act further in determining how said capital stock so referred to in said agreement should be voted. The said defendant wrongfully and fraudulently and with intent to deprive the said plaintiff of any voice in the management of said corporation, and with wrongful and fraudulent intent to violate the terms of said agreement, has refused and still continues to refuse and threatens to continue to refuse to cooperate with the said plaintiff in determining how the vote of the shares of the capital stock so owned by the plaintiff and defendant shall be cast upon any matter arising in the corporate meetings and affecting the control or management of the corporation so that, by reason of the refusal of the defendant to cooperate as aforesaid, said 776 shares of the capital stock of said corporation now held by the defendant and said 511 shares of the capital stock of said corporation now held by the said plaintiff, which said stock so held constitutes a majority of the capital stock of said corporation, cannot be voted as is contemplated by the terms of said agreement and will, therefore, be robbed of its function and greatly depreciate in value unless the court shall appoint a trustee to take possession of said capital stock and vote the same at stockholders' meetings of said corporation so long as the said plaintiff and defendant do not agree as to the way in which the votes of said capital stock so jointly held by them as aforesaid shall be cast.

"(9)   It is necessary, in order that the rights assured the said plaintiff, by the contract marked 'Exhibit A' be conserved to him, that an officer of this court shall take possession of the said 776 shares of the capital stock of said corporation now held by the defendant and the said 511 shares of said corporation, now held by the plaintiff and sell the same, unless the said plaintiff and defendant will agree as to the manner in which all of said shares of the capital stock shall be voted at stockholders' meetings of said corporation.

"(10) On the 14th day of January, 1913, will be held the annual meeting of the stockholders of said corporation for the election of trustees and officers and the transaction of other business relative to the management of said institution, so that an emergency exists, and it will be necessary that a trustee be appointed to take possession of and vote said capital stock now held by the plaintiff and defendant pending the final determination of this action and prior to said stockholders' meeting on January 14th, 1913. Unless the said defendant is enjoined by order of this court, he will vote said shares of the capital stock so owned and held by him at said stockholders' meeting on January 14th, 1913, in disregard of said agreement and the rights of said plaintiff thereunder to the great and irreparable damage of the said plaintiff.

"Wherefore, this plaintiff prays that the said defendant be enjoined from voting any shares of the capital stock of said corporation owned or controlled by him without agreeing with this plaintiff as to how the vote of said stock shall be cast at any stockholders' meeting; that an officer of this court be appointed to take possession of all of the capital stock of said corporation held by the plaintiff and the defendant and that such officer forthwith cause said stock to be sold in the open market, the proceeds thereof to be distributed ratably between the plaintiff and the defendant, and that pending said disposition said officer shall cast the vote of said capital stock at all stockholders' meetings of said corporation.

"And further prays, that pending the final determination of this action said defendant be restrained from voting said stock at such stockholders' meeting on January 14th, 1913, or at any time to which said meeting may be adjourned, without agreeing with said plaintiff as to the manner of voting said stock.

"And Plaintiff Further Prays, That if the said defendant shall disavow the agreement under which as hereinbefore set forth said 262 shares of the capital stock of said corporation were transferred to said defendant by this plaintiff, that an accounting be had and that the said defendant be required to retransfer to this plaintiff said 262 shares of the capital stock of said corporation upon payment to the said defendant of two hundred forty ($240) dollars per share, together with

interest at legal rate, less dividends which have been paid thereon, which said sum the said plaintiff avows his willingness to pay to the said defendant whenever this court shall by decree determine the amount which in good conscience should be paid therefor;

"And Further Prays, That he may have and recover his costs and disbursements herein and have such other and further relief as to the court may seem meet in the premises considered."

"Exhibit A.

"This agreement made and entered into this 20th day of March A. D. 1903 between J. J. Haggerty, J. P. Gleason and M. Earles, Witnesseth:

"That, Whereas, all said parties are stockholders in the American Savings Bank and Trust Company, a banking corporation, and therefore interested in the management and success of said corporation, and to that end each of the parties hereto agrees, one with the other, that all the stock owned and controlled in said corporation by each of the parties shall be pooled and joined as if one holding in all matters pertaining to the voting, managing, controlling and officering the corporation, and to that end doth each enter into this agreement one with the other, towit:

"1st: That the entire holdings of stock owned and controlled by the three parties hereto shall be voted together upon all matters arising in the corporation wherein the stockholders are called upon to vote, and such vote shall be cast as decided by a majority of the three parties hereto.

"2nd: That in the absence of any one of the parties hereto his stock may be voted by proxy by either or both jointly of the other parties hereto, and shall be voted as directed in such proxy or as decided by a majority vote as before stated herein, on any matter effecting the business of the corporation.

"3rd: That as trustees of the corporation each of the parties hereto agrees one with the other, to abide by a majority decision, as to any matter arising in the corporate meetings and effecting the control and management of the corporation and to cast his vote on any such matter as decided by a majority of the parties hereto:

"4th: That each of the parties hereto hereby agrees and promises one to the other, that he will subscribe for and take

such shares of stock of the corporation so as that the joint holdings of the three parties hereto shall at all times constitute and be a majority of all the outstanding stock of the corporation, and that each shall take an equal number of shares to that end at any time it may be decided by the board of trustees to sell additional stock to that at present issued, but the sale of additional stock shall be sanctioned and agreed to, by the parties hereto, only when they and each of them are able and willing to increase their holdings as herein stated.

"5th: That in case either of the parties hereto wishes to sell or dispose of his holdings in the stock of the corporation he shall give the right and option, to purchase same, to the other parties hereto, for at least 30 days, at the then actual value of such stock as determined by the assets of the corporation, before offering same to any other party; and after such option expires and in case of an offer of purchase from any other party, the parties hereto shall have the right, and the option is hereby extended, to take such stock at any price offered by any other party, in preference to any such intending purchasers whatever; Provided, That for a period of five years from date the parties hereto agree one with the other that neither shall sell nor offer for sale, except to one another, his stock in the corporation, unless the whole pool or holdings of the parties hereto shall be sold together, and in case of any sale a majority decision of the parties hereto, as to the price, shall be binding.

"6th: This agreement shall run with the stock now owned by the parties hereto, as well also with all stock hereafter acquired by the parties hereto, and shall be binding upon the parties and their legal representatives until such time as dissolved in writing by mutual consent. This agreement is based upon a valuable consideration which each of the parties hereto hereby acknowledge, one unto the other.

"In Witness Whereof, We the parties hereto set our hands and seals this 20th day of March, A. D. 1913.

                              "J. J. Haggerty
                              "James P. Gleason,
                              "Michael Earles."

In support of his allegation for a temporary injunction and for the appointment of a trustee, the appellant filed with

his complaint his own affidavit in which he set forth more in detail the matters alleged in his complaint, averring specially therein that the respondent had, since the time of the making of the agreement therein referred to up to the time of the meeting of the stockholders in January, 1912, recognized the same as a binding obligation between the parties thereto, and had voted his stock in the corporation in accordance with the provisions thereof.

The respondent filed the affidavit of himself and certain of the trustees and officers of the bank in opposition to the application. In his own affidavit, the respondent took issue with many of the material allegations of the complaint. While he admitted the execution of the agreement set forth therein, he denied that it had ever been acted upon by the parties thereto, and averred that, upon the purchase of the stock referred to in the complaint as the Bonnafield, Minehan, Grant and O'Brien stock, the matter of the agreement was talked over between them, and it was then mutually agreed that the same should be treated and considered as an absolute nullity. He also denied the appellant's version of the purchase of such stock, averring that the same was purchased and paid for by himself individually through the instrumentality of one Kavanaugh, who acted as agent for the several holders, and that he afterwards, at the appellant's request, sold the appellant 91 shares of his holdings, none of which was of the stock purchased through Kavanaugh.

He denied that the trustees of the bank elected at the January 1912 meeting of the stockholders were "dummy trustees," or subservient to his control, or that he had absolute or unlimited control of the bank; denied that he had, in combination with other stockholders, or otherwise, attempted to remove the appellant as manager and director of the bank; on the contrary, he averred that the appellant voluntarily resigned as manager on being confronted with certain of his acts as such manager, and that he was still a director of the bank; denied that he had refused the ap-

pellant access to the books of the bank; and averred that the appellant had, on the contrary, been expressly tendered the privilege of examination at any time when such examination would not interfere with the conduct of the business of the bank. He specially averred that he had refused, and would continue to refuse, to vote his stock in conjunction with that of the appellant under the written agreement.

The respondent further averred that the appellant, while manager of the bank, had, in furtherance of his private business and business adventures, mismanaged the business of the bank, causing it direct losses in large sums of money, and that the bank had been compelled to cease paying dividends for a time, that these losses might be recuperated out of the profits of the bank's general business.

The trustees, in their affidavits, averred their independence of action. They denied coercion or attempted coercion of their acts as such trustees by the respondent, and substantiated the respondent's averments of mismanagement of the affairs of the bank by the appellant.

The affidavits of the officers of the bank show, among other things, the financial condition of the bank. It was shown that it had an unimpaired capital stock of $200,000, a surplus fund of $300,000, and a deposit of upwards of $2,000,000, and that it was doing a legitimate and profitable banking business.

Counter affidavits were filed on behalf of the appellant, in which the charges of incompetency and mismanagement were denied, and in which charges of misconduct in the management of the bank's affairs were made against the respondent. It was charged that he had secured from the bank, for himself and for corporations of which he was the principal stockholder, loans vastly in excess of the proper limit; that the state bank examiner had complained of these excessive loans and had insisted that they be reduced, and that the respondent's enmity towards him as manager arose when he insisted on a compliance with the bank examiner's demands.

A reply affidavit was filed by the respondent in which he sought to show that he had not borrowed from the bank in excess of the proper limit, and that the bank examiner's complaint had been made on misinformation; that all of the loans made him from the bank were loans on call, that he stood ready at any time to pay them on demand; and that the appellant made no complaint concerning these loans until after his withdrawal as manager of the bank. He further averred that he, at that time, personally owed the bank nothing whatever; that he was endorser on paper for others to the extent of $38,280; that he was worth, over and above his debts and liabilities, more than $2,500,000; that the greater part of the paper on which he is endorser is secured by first mortgage on real estate; and that all of the makers of such paper are of themselves abundantly able to pay their several obligations in full.

In this court, the appellant assigns error upon the ruling of the court refusing to grant a temporary injunction, refusing to appoint a trustee to take control of and vote the capital stock of the parties pending the final determination of the action, and in sustaining the demurrer to the complaint. He argues that contracts of the nature of the one here in question are valid; that, while such contracts have been often attacked in the courts, the present tendency is to uphold them, in the absence of a showing that their purpose is to avoid some express provision of the law or to commit a fraud upon other stockholders; "for," he concludes, "there is nothing inherently illegitimate in a combination by certain stockholders whereby they may, for a lawful purpose, control the conduct of the affairs of a corporation."

Many cases are cited in support of the contention, among which is the case from this court of *Winsor v. Commonwealth Coal Co.*, 63 Wash. 62, 114 Pac. 908. We shall not, however, enter into an extended review of the cases cited from other jurisdictions. We think that an examination of them will show that in none of them has the court in upholding

the contract gone to the extent we are asked to go in this instance. In all of the cases cited, in so far as we have been permitted to consult them, the contracts relate to corporations engaged in purely private enterprises, having no public or trust character, and in which the suit was brought either by a minority stockholder to restrain the parties to the contract from acting thereunder, or by one party to the contract against another or others to set the contract aside. In none of the cases was the suit to compel the specific performance of the contract. The case cited from our own court is of the same character. The plaintiff in that case, prior to the execution of the contract of which he complained, was the owner of the majority of the corporation's capital stock. The corporation had become embarrassed financially, and was in the hands of a receiver appointed by the court at the suit of a creditor. The plaintiff had been unsuccessful in his endeavors to extricate it from its difficulties. While in this situation, he entered into a contract with certain of the defendants whereby they agreed, in consideration of the transfer to them of certain of the plaintiff's stock, to advance sums of money to the corporation, so that it could be taken from the hands of the receiver, and put back upon a working basis. The contract included a pooling agreement to continue for ten years under which the remaining stock held by the plaintiff was pooled with that of the other parties to the contract, to be voted by such parties during the continuance of the term of the agreement. The contracting defendants had performed their part of the agreement, in so far as it was then capable of being performed, and had advanced large sums of money to the use of the corporation on the faith of the agreement. It was sought to be set aside on two grounds: one, that the plaintiff had been overreached; and the other, that the agreement was void as being in contravention of public policy. This court denied both contentions, saying with respect to the latter:

"The agreement to pool the stock was not against public policy, because there was nothing unlawful about it, and nothing which necessarily affected the rights of minority stockholders. Persons owning stock have the unqualified rights to combine their interests to secure the management of the corporation when such management is fair to all stockholders alike. . . . If this agreement had been made for the purpose of depriving some stockholder of his rights in the company, or of doing some other illegal act, a different rule would apply. But this contract seems to have been entered into for legal purposes and in good faith, and has been acted upon. The plaintiff is not in a position to seek its rescission."

This case, we think, was rightly decided. So, also, we think were most, if not all, of the cases cited by the appellant from other jurisdictions to the same purport. But, as we say, we think them not in point on the particular question here presented. The corporation concerning whose capital stock the contract in question was made is a corporation having functions of a public nature as well as private functions to perform. It is a banking corporation, authorized by law to receive deposits. It is by statute subject to inspection by officers appointed by the state, and subject in a measurable degree to control by such officers. Its stockholders are subject to liabilities in addition to those assumed by stockholders of a merely private corporation. Its trustees are also more restricted in their powers pertaining to the management of the corporation's affairs than are the trustees of a private corporation; and such trustees may, for certain omissions of duty not necessarily involving moral turpitude, be convicted and imprisoned as for a felony.

The cases cited also differ widely from the case at bar in the relief sought. Our own case is illustrative of the others. In it, the court was asked to declare void a contract entered into in good faith and for a lawful purpose which was being carried out by the parties thereto having the obligation to perform, when to do so would result in an irretrievable

loss to such parties. In the case at bar, we are asked to specifically enforce a contract against the will of one of the parties thereto, when to do so may take the corporation from without the control of officers selected by the mutual agreement of the stockholders and vest it in officers selected by the parties to the contract, one of whom is coerced to act against his will, or perhaps may vest its control in the court through the medium of a trustee appointed by the court.

If, therefore, we assume that the contract is so far valid that a court would not interfere were the parties thereto carrying it out in good faith, and further assume that it is a contract capable of being specifically enforced by the court, we think it clear that it is a contract a court ought not to specifically enforce. We need not enlarge upon the reasons for this conclusion. They abundantly appear from a consideration of the matters above recited. We may properly add, however, that the complainant is not left utterly without remedy. If the contract be valid, he has an action at law in damages for the injury suffered by him because of the failure of the other party to the contract to carry out its terms. And to this remedy, he must be relegated.

The appellant contends further that, if the pooling contract is not specifically enforced, he should be permitted to recover from the respondent the capital stock purchased from Bonnafield, Minehan, Grant and O'Brien, mentioned in the complaint, and which he alleges he transferred to the respondent on the promise that it should be held at all times subject to the terms of the contract. But since the contract itself does not provide this as a remedy for a breach of its condition, the agreement falls within the general rule relating to breaches of condition concerning the transfer of personal property. The general rule is that such contracts will not be specifically enforced, but the injured party will be left to an action in law for damages. Corporate stock comes within the scope of the rule. An exception exists where there are peculiar features concerning the agreement

which leaves the remedy at law inadequate, but no such peculiar feature exists in the present case. A specific enforcement of the contract is sought that a minority stockholder therein may become a majority stockholder, and this is not sufficient to invoke the rule. *Foll's Appeal*, 91 Pa. St. 434, 36 Am. Rep. 671; *Gage v. Fisher*, 5 N. D. 297, 65 N. W. 809, 31 L. R. A. 557.

The judgment is affirmed.

CROW, C. J., MORRIS, PARKER, and MOUNT, JJ., concur.