PROVOSTY, J.
This suit was filed on June 24, 1914. Plaintiff alleges as follows:
“First. That for much more than one year prior to May 25, 1914, petitioner has been in actual possession as owner of the property in this parish known as the St. Clair plantation located in the vicinity of the post office known as English Turn, and of all of the buildings and improvements thereon situated, including specifically the main residence thereon located, and the yard appurtenant thereto, the said plantation being more specifically described as follows, to wit: [Description of plantation].
“Second. That from April 25, 1914, until May 25, 1914, one Lionel A. Goudeau, who resides in this parish, occupied said main residence and the yard appurtenant thereto with his family by petitioner’s consent as a tenant at will of petitioner.
“Third. That on May 25, 1914, petitioner withdrew his consent to the occupancy of the said premises by the said Lionel A. Goudeau, and on May 30, 1914, formally notified said Goudeau *345 to vacate said premises within fifteen (15) days from that date.
“Fourth. That despite said notice said Goudeau has failed and refused to vacate said premises and continues to occupy the same, thereby disturbing petitioner’s possession thereof.
“Wherefore, the premises considered, petitioner prays that the said Lionel A. Goudeau may he duly cited to answer this petition, and that after due proceedings there may be judgment in petitioner’s favor and against the said Lionel A. Goudeau decreeing that petitioner is entitled to the possession of all of the property described in the foregoing petition, including specifically the main residence situated on the said property and the yard appurtenant thereto; that petitioner be restored to enjoyment thereof, and that defend* ant, Lionel A. Goudeau, vacate the same and deliver possession thereof unto petitioner.
“Petitioner further prays for such general and equitable relief as he may be entitled to in the premises.”
To this petition the defendant answered as follows:
“And now into court comes Lionel A. Goudeau, defendant herein, and for answer to the plaintiff’s petition, denies all and singular the allegations thereof, save such as may be hereinafter specially admitted.
“Further answering, respondent avers:
“Art. 1. The allegations of article 1 of the petition are admitted.
“Art. 2. Defendant admits that he is now occupying the main residence on the St. Olair plantation, at English Turn, La., and is endeavoring to generally supervise some forty thousand trees set out on this plantation under liis immediate supervision. And respondent admits that his occupancy of the said plantation began at the request of plaintiff and in conformity with the contract hereinafter referred to. Respondent denies that he is now or ever was a tenant, at will, of petitioner.
“Art. 3. The allegations of article 3 of the petition are admitted, save as to the exact dates; respondent averring that the said dates are approximately correct.
“Art. 4. Respondent admits that he has refused ■ to remove himself and his family from the premises and is continuing to occupy the same, but avers that such occupancy is rightful as hereinafter set out.
“Art. 5. Respondent avers that under date March 24, 1914, he entered into an agreement with plaintiff as per copy of the same attached hereto, and made a part hereof and marked Exhibit A.
“Art. 6. Respondent avers that the said contract was prepared for signature by the personal counsel of the plaintiff.
“Art. 7. Respondent avers that he has, at all times, fully and completely complied with each and all of his obligations under the aforesaid contract.
“Art. 8. Respondent avers that prior to entering into the said contract Exhibit A he had received offers to enter into agreements with several other persons, and that the offer which resulted in the contract Exhibit A originated with and was at the time solicitation of the plaintiff.
“Art. 9. Respondent avers that with the full knowledge and consent of the plaintiff and at his request, this respondent has complied with the said contract Exhibit A, as follows:
“(a) At the request of Lothrop, respondent moved his family consisting of himself, his wife and five children from their erstwhile domicile in Lake Charles, La., onto the St. Clair plantation at English Turn, Plaquemines parish, La.
“(b) Respondent avers that prior to entering into the contract of March 24, 1914, he was the owner of a contract with J. J. Borskey & Sons of Alvin, Tex., for the delivery of sixty thousand (60,000) trifoliata trees. That the said contract was a valuable contract, and was such a contract as plaintiff had neither the knowledge or ability to secure.
“That respondent voluntarily turned over this contract to the embryo corporation and caused the said sixty thousand (60,000) trees accruing to him thereunder, to be shipped to the St. Clair plantation at English Turn, La., where the same were set out under the respondent’s supervision, respondent being personally on the ground and giving his personal attention to the setting out of the same. That of the said 60,000 trees, approximately 40,000 (forty thousand) have survived the transplanting and are now flourishing and valuable plants doing well on the said íát. Clair plantation.
“That the said trees are ready for budding in September and that when so budded, will be worth not less than sixty thousand ($60,000) dollars. That respondent caused his trees and plants at Lake Charles, La., to be budded and otherwise prepared for removal to St. Clair plantation.
“Art.' 10. Respondent avers the contract of March, 1914, enumerated the following agreements to be made between the pai-ties:
“(1) The charter of the Lothrop-Goudeau Orange Company to be signed.
“(2) The sale by respondent of all his rights, title, and interest in the new seedless variety of oranges, known as the Goudeau orange, together with 'all his rights, title, and interest in the trees and plants above referred to as being at Lake Charles, -La., the said sale to be made in consideration of $75,000, par value full paid common stock of the Lothrop-Goudeau Orange Company. - ,,
“(3) The sale by Lothrop of St. Clair plantation, being the property described in plaintiff’s petition, for seventy-five thousand ($75,000) dollars, par value, full paid preferred stock of the Lothrop-Goudeau Orange Company.
“(4) A five-year employment contract with respondent, under which respondent was to receive fifteen thousand ($15,000.00) dollars par value, full paid preferred stock of the Lothrop-Goudeau Orange Company, the said stock to *347 be turned over on the day that the charter and other contracts were signed.
“(0) Five years’ employment contract with the plaintiff, under which the plaintiff was to receive ten thousand ($10,000.00) dollars par value full paid preferred stock, and five thousand dollars. ($5,000.00) full paid common stock of the Lothrop-Goudeau Orange Company, delivery to be identical with the delivery of stock to respondent. That the said contract Exhibit A likewise specifically provides in section 9, that:
“ ‘All contracts referred to herein to be executed shall be executed on the same day the charter of said proposed corporation is signed.’
“Art. 11. That the drafting of the said five agreements was by the said Lothrop intrusted to his personal counsel and relative. That on April 10, 1914, the charter of the said company was duly signed, but that because of the failure of the said Lothrop and his said personal counsel to have the same prepared, the other contracts mentioned in the foregoing article of this answer were not ready for signature, and although your respondent called for the same, were not signed concurrently with the charter. The said failure being, as respondent is informed and believes and now charges, in_furtherance of a deliberate plot on the part of the plaintiff to evade his obligations under the contract marked Exhibit A, and to enrich himself at the expense of your respondent.
“Art. 12. That after respondent had removed with himself and his family to English Turn, and; after he had caused his sixty thousand trees to be planted out on St. Glair plantation, before the expiration of the forty-five days from the signing of the Lothrop-Goudeau Orange Company charter, plaintiff informed your respondent that he was seeking a pretext wherewith to discharge himself from the contract Exhibit A and would evade his obligations thereunder, if possible.
“Art. 13. That in the contract Exhibit A it was specifically provided, as set forth supra, that the subsidiary contracts referred to therein should all be signed on the same day as the charter of the Lothrop-Goudeau Orange Company. That it was also provided that the stock to be paid for the services of plaintiff and respondent should be delivered when the contracts for said services were signed. This clause was put in, as plaintiff well knew, with the deliberate intent of enabling either plaintiff or defendant to utilize the stock contemplated thereby in order to raise, if need be, five thousand dollars ($5,000.00), as contemplated by the contract Exhibit A.
“Respondent further avers that the said contract Exhibit A specifically provides that the said five thousand ($5,000.00) dollars was to be deposited by each of the parties thereto in a bank to be selected by mutual consent, and that each of the parties should have forty-five days from the date of the signing of all of the contracts and the delivery of the said stock, within which to produce and deposit the said five thousand dollars.
“Art. 14. That to this day the plaintiff has never signed or consented to sign the said subsidiary contract, nor ;has he _ selected, nor called upon respondent to select ‘a bank within which to deposit the said five thousand dollars ($5,000.00), nor has he deposited five thousand dollars ($5,000.00) in any bank.
“Art. 15. That under date of May 19, 1914, while respondent was in Lake Charles, La., having repaired thither at the suggestion of the plaintiff to supervise the budding of his trees near that point preparatory to their removal to English Turn, La., plaintiff addressed to your respondent at Bell City, La., a letter wherein he stated:
“ ‘I am ready to perform all my obligations in connection with the Lothrop-Goudeau Orange Company, including the depositing of five thousand dollars, as per agreement, and shall expect all obligations on your part in connection with our orange company to be fulfilled on or before May 24, 1914.’
“That the said letter did not reach your respondent until after May 24, 1914, and after his return to English Turn, La. That on May 24, 1914, the subsidiary contracts above referred to were not ready for signature.
“That, to this day, none of the subsidiary contracts have been rendered to your respondent for signature.
“Art. 16. That plaintiff has repeatedly stated that he would not sign the said subsidiary contracts.
“Art. 17. So it is that this defendant and his family and the sixty thousand trees which he had contracted for find themselves located upon St. Clair plantation at English Turn, La.
“And now, assuming the position of plaintiff in reconvention, this respondent avers:
“.Art. 1. That he is entitled to the specific performance by plaintiff of his obligations under contract Exhibit A.
“Art. 2. (1) That he is now and has always been ready and willing to fully comply with his obligations under the said contract Exhibit A.
“(2) That he has both verbally and in writing, personally and through his counsel, called upon the plaintiff to comply fully with his obligations under this contract Exhibit" A, but that the said plaintiff has neglected or refused to comply with his obligations, and has by deeds as well as by words, evidenced his deliberate intention of evading his obligations under said contract, and denied to your respondent his rights thereunder.
“(3) That plaintiff has through other methods violated his contract in the following respects:
“(1) In not having prepared for signing the subsidiary contracts mentioned, up to the time of the signing of the charter.
“(2) In declining to sign the said subsidiary contracts.
“(3) In repudiating his obligations under the contract Exhibit A.
*349 “(4) In neglecting and omitting to carry out his obligations under the said contract Exhibit A.
“(5) In filing- this suit and attempting illegally to oust this defendant from said plantation.
“(6) In attempting to enrich himself at the expense of this defendant by said ouster of this defendant from said plantation and by retaining upon said plantation the said forty thousand aforesaid trifoliata trees.
“Art. 3. That in the alternative and only in case it should be held that respondent is not entitled to specific performance of the contract Exhibit A, this respondent is entitled to, and claims hereby, damages as follows:
“(1) Damages in the sum of sixty thousand dollars ($60,000.00), being the present value of forty thousand trees purchased by him and set out by him on St. Clair plantation, less such sum, not exceeding two hundred dollars ($200), as may have been paid for the said Lothrop on account of the purchase price thereof.
“Art. 4. To the sum of one hundred thirty-eight 40/100 ($138.40) dollars, being the cost to your respondent of moving himself and his family from Lake Charles, La., to English Turn, La.
“Art. 5. To the sum of seventy-five hundred dollars being the value of defendant’s time for one year, which time respondent will lose as the result of plaintiff’s machinations. Respondent reserves the right to claim such further and additional time as he may lose as a result thereof.
“Art. 6. To the sum of two hundred and fifty thousand dollars, being respondent’s share of the reasonable profit to be expected from the venture, if carried out as contemplated by the contract Exhibit A.
“Art. 7. To the sum of twenty-five thousand dollars ($25,000.00) punitive damages for the breach by the plaintiff of his contract with the respondent.
“Wherefore respondent prays that plaintiff’s suit be dismissed at his costs, and that a judgment be entered ordering the specific performance by the plaintiff of the contract Exhibit A in all of its parts, and in the alternative, this respondent prays for a judgment against the plaintiff in the sum of three hundred forty-two thousand six hundred thirty-eight 40/100 dollars, with interest from the date of the judgment and for costs and all general and equitable relief.”
Defendant filed an amended answer as follows:
“That in filing his original answer herein, wherein he admitted the allegations of article 1 of plaintiff’s petition, he fell into an error of fact in that he thought that the date specified in said article was March 24, 1914, the date of the contract; that he now discovers that the said date set forth in said petition is May 25, 1914, and he desires to amend his admission so as to admit the allegations down to the date of March 24, 1914, and to deny the same beyond said date; that he desires to renew all of the allegations of his original answer, and prays that this supplemental answer-may be filed and for costs and all general relief.”
The contract in question reads as follows:
“This contract and agreement made by and between Lionel A. Goudeau, a resident of this city of Now Orleans, state of Louisiana, and Irving S. Lothrop, a resident of English Turn, parish of Plaquemines, La., both of the, full age of majority, witnesseth:
“Whereas, the said Lionel A. Goudeau is the owner of a new variety of seedless Louisiana orange known as the ‘Goudeau’ orange, which orange was awarded the Wilder Medal by the American Pomological Society, at its meeting at Washington, D. C., in November, 1913, also the owner of about one thousand orange trees of said seedless variety, and the said Lionel A. Goudeau being desirous of establishing a grove of said oranges, and to propagate the same on St. Glair plantation, situated at English Turn, P. O., La., and owned by Irving S. Lothrop; and
“Whereas, the said Irving S. Lothrop is the owner of said St. Clair plantation situated at English Turn, P. O., La., and measuring about forty-one arpents on the Mississippi river, by forty arpents in depth, except a certain plot of land now owned and occupied by Mrs. Meyers, and also except those lots along the upper line of St. Glair, which have been sold in what is known as subdivision A of St. Glair, which said plantation is adaptable for the purposes described by the said Lionel A. Goudeau,
“Now, therefore, the parties hereto have agreed and contracted and do by these presents agree and contract, each with the other, as follows, to wit:
“(1) There shall be organized a corporation known as the Goudeau-Lothrop Orange Company, with capital stock of two hundred thousand dollars, one half thereof to be preferred stock, which shall enjoy and have the advantages hereinafter stipulated, and the other half of said capital stock shall be known as common stock and shall enjoy only the rights hereinafter agreed and stipulated.
“(2) That in addition to the usual and customary clauses necessary to carrying on the business of growing and selling orange trees and oranges, and all business incidental thereto, the following clauses shall be inserted in the charter, to wit:
“ ‘Both the common and preferred stock shall have the same voting power in the election of officers and all elections requiring the voting of stock.
“ ‘In case of the liquidation, or upon the dissolution of this corporation, the preferred stock shall be first paid at the par value thereof and by preference over the common stock, the bal *351 anee of the assets of the corporation, if any, to be applied to the common stock to the par value thereof, and the balance, if any, to be equally applied to both the common and preferred stock.
“ ‘No stock shall be sold unless first offered to the board of directors and any member thereof shall have the first preference of purchasing samo at book value.’
“(3) The said Lionel A. Goudeau agrees and obligates himself to execute a notarial deed to the Goudeau-Lothrop Orange Company, of all his rights, title, and interest which he has or may have in the new seedless variety of orange above described, together with all the property above described and owned by him and now situated near Lake Charles, La., including said Wilder Medal, and all the orange trees, buds, stock, etc., he now owns on his farm near Lake Charles, La., and to deliver all of said property to said St. Clair plantation for and in consideration of seventy-five thousand dollars of the common stock of the Goudeau-Lothrop Orange Company.
“(4) Tho said I. S. Lothrop agrees and obligatos himself to execute a notarial deed to said proposed corporation of St. Clair plantation as above described, free of all incumbrances and with full warranty, for and in consideration of seventy-five thousand dollars of the preferred stock of the Goudeau-Lothrop Orange Company.
“(5) The said Lionel A, Goudeau agrees to execute a contract with the proposed corporation, wherein the parties thereto shall agree that the said Lionel A. Goudeau shall devote all his time, during ordinary business hours, to the best interest and welfare of said proposed corporation, for a period of five years, at an annual salary of three thousand dollars payable in preferred stock and deliverable at the time the contract of employment is signed.
“(G) The said Irving S. Lothrop agrees and obligates himself to execute a contract with the proposed corporation, wherein the parties thereto shall agree that the said Irving S. Lothrop shall devote all his time, during ordinary business hours, to the best interest and welfare of the said proposed corporation, for a period of five years, at an annual salary of three thousand dollars, payable as follows: Five thousand dollars in common stock and ten thousand dollars in preferred stock, delivery to bo made of said, stock at the time of the execution of said contract of employment. I
“(7) It is further agreed by and between the] parties hereto that the remaining twenty thou-1 sand dollars of tho capital stock of said proposed corporation shall never be sold unless the sale thereof, or any part thereof, is approved by the parties hereto.
“(8) -It is further agreed by and between the parties hereto that the seventy-five thousand dollars of preferred stock referred to in article 4 of this agreement, and the seventy-five thousand dollars of common stock referred to in article 3 of this agreement, shall be deposited with the Hibernia Bank & Trust Company, of New Orleans, in escrow, or trust, and there to remain for a period of five years, and the parties hereto bind themselves to execute an agreement, designating the said banks trustees, to hold said stock for a period of five years, during which time the said stock cannot be sold, pledged, or any right therein alienated or pledged; said agreement to be canceled at any time by the parties hereto, but said cancellation must require the written approval of both parties hereto.
“(9) All contracts referred to herein to be executed shall be executed on the same day the charter of said proposed corporation is signed.
“(10) The machinery in the sugar house and the willow trees in front of said plantation are not to be included in the sale of said St. Clair plantation.
“(11) All taxes and assessment against said St. Clair plantation for the year 1914 to be assumed by the proposed corporation.
“(12) Lionel A. Goudeau and Irving S. Lothrop each binds and obligates themselves to deposit in a bank, to be hereafter selected by mutual consent, each the sum of five thousand dollars cash, which shall be placed to the credit of the proposed corporation, said deposits of five thousand dollars ($5,000) must be made within forty-five days after the signing of the charter.
“(13) In addition to the clauses mentioned in article 2 of this agreement, there shall also be a clause in the charter of the proposed corporation which shall read as follows:
“ ‘This corporation shall be powerless to contract debts of any character or nature whatsoever, except the written-consent of both president and secretary treasurer.’
“(14) Immediately after the signing of the charter of the proposed corporation the parties hereto bind and obligate themselves to enter into a voting agreement for their mutual benefit, whereby they shall agree as follows, to wit:
“(a) 'Lionel A. Goudeau shall agree and obligate himself to always vote for the election of Irving S. Lothrop as a director of the proposed corporation and shall always agree to vote in .favor of Irving S. Lothrop as secretary treasur'er of the proposed corporation.’
i “(b) ‘Irving S. Lothrop shall agree and obligate himself to always vote for the election of Lionel A. Goudeau as a director of the proposed corporation and shall always agree to vote in favor of Lionel A. Goudeau as president of the proposed corporation.’
“(15) Before the signing of this agreement, the parties hereto decided that the name of the proposed corporation shall be Lothrop-Goudeau Orange Company, instead of Goudeau-Lothrop Company.”
Plaintiff moved for judgment on the face of the pleadings, and on this motion the court rendered judgment as prayed in the petition, and dismissed the reconventional demand, as not being “necessarily connected *353 ■with and incidental to the main suit,” the parties being residents of the same parish.
[1] In so far as the prayer for specific performance of the contract is concerned, _two insuperafiRr ubjectjOTS"sugggsfWhemseives at onge why the court cannot grant that relief. One is that the contracts whereof specific performance is asked have not yet been entered into and may never be entered into, and that a contract not yet entered into cannot be ordered to be specifically performed. The other reason is that the contract between plaintiff and defendant contains stipulations which are illegal, and therefore cannot be enforced, and that these stipulations are essential, inseparable parts of the contract.
The contracts whereof specific performance is asked areThose which plaintut and defendant agreed — th£y_would enter into with the corporation when the corporation shofild have been organized, bv which they should sell, and the corporation should buy, the properties in question, and by which the corporation should hire their services for five years. These contracts have not yet been entered into, and may never be entered into. The learned counsel for defendant argue that there is an existing contract to the extent of defendant’s being obligated to tender to the corporation for acceptance the said contracts of sale and hire, and that specific performance may be ordered to that extent at any rate. Granting, for argument, that this could be done if the court had assurance that the tender, would be accepted, such assurance is absent. There is no allegation of it, indeed, not even any allegation touching the composition of the governing authority of the corporation. That plaintiff's influence would be exercised against acceptance may be assumed, and he controls one-half of the stock of the corporation. A decree of specific performance will not be made in the absence of assurance that it will not be nugatory. 36 Cyc. 576. Counsel suggest that the judgment could order plaintiff to favor acceptance. This would mean that plaintiff's vote as a director, if he be one, could be controlled by the decree of the court, and that the court could compel plaintiff to exercise his influence on the other directors to induce or force them to vote for acceptance. The court would be going into, pretty deep water if it undertook to do anything of that kind.
The illegal stipulations are those by which full paid stock was to be issued for services to be rendered, and plaintiff and defendant were to cast their votes mutually for each other as directors.
[2] Article 266 of the Constitution provides that:
“No corporation shall issue stock or bonds, except for labor done or money or-property actually received.”
Learned- counsel for defendant cite decisions of the courts' of other states to the effect that a legal provision like this does not preclude the issuance of stock for services to be performed in the future. But the reasoning of those, decisions does' not impress us as being even specious. The point is not debatable. “Labor done or money or property actually received,” cannot possibly mean labor to be done or money or property to be received. The evident object of the provision was to prevent the doing of this very thing — ■ the issuing of full paid stock for services to be performed.
[3] That a contract by which two directors should agree to vote for each other is illegal, is a proposition that hardly needs elaboration. See West v. Camden, 135 U. S. 507, 10 Sup. Ct. 838, 34 L. Ed. 254.
[4] These illegal stipulations are essential parts of the contract, inseparable therefrom, because the issuance of this $5,000 of preferred stock to each of the parties was part of the consideration of the contract, and the employment of the two contractors as the *355 agents who should have charge and. control of the affairs of the corporation was one of its main inducements, and therefore without these clauses, or either of them, the parties would very evidently not have been willing to enter into the agreement at all.
[5] We hold, therefore, that specific performance cannot be demanded, and we pass to the question whether the reconventional demand is sufficiently “connected with, and incidental to the” main suit (O. P. art. 375) to justify its being urged in this suit.
The reconvention demand embraces two demands; one, in reimbursement of the expenses incurred by defendant on the place, and the other, in damages for violation of contract. The former we hold to be connected with and incidental to the main suit; the other, not.
According to the allegations of the answer, which for the purposes of the discussion must be taken as true, defendant moved to the premisies, with his family and belongings (including his orange trees), with the full knowledge and consent of plaintiff — nay, at his request — because of the said contract and for the purpose of carrying it out. So that defendant went into possession in perfect good faith, and, in consequence, the suit against him is one to oust a possessor in good faith. Now, since a possessor in good faith cannot be ousted until he has been reimbursed the expenses incurred by him on the property (O. 0. art. 3453), his claim for such reimbursement is necessarily incidental to the suit for his eviction. A case strikingly in point is Destrehan v. Fazende, 13 La. Ann. 307. In these expenses we understand the value of defendant’s trees be included, in so far as these trees cannot be removed without danger of their perishing or deteriorating.
Plaintiff’s learned counsel would assimilate defendant to a tenant at will. But the difference between the two is manifest. The tenant at will goes' into possession by virtue of an understanding that his possession is to be temporary, terminable at any moment at the owner’s will and even caprice, and with no right whatever to incur expenses, whereas there was no such understanding in defendant’s case. On the contrary, his settlement on the place was not to be terminable at plaintiff’s will, but to continue indefinitely, and he entered for the very purpose of incurring expenses. His possession was to be as agent of the corporation of which he was to be half owner; so that it was to be practically as owner.
[8] His claim for damages for violation of contract stands upon an entirely different footing. Plaintiff’s suit is not based upon this contract. Plaintiff is seeking neither to enforce this contract nor to set it aside. The suit is founded exclusively upon plaintiff’s title as owner. It is defendant who brings this contract into the suit, and seeks to enforce it by setting it up as a defense to the suit, by claiming its specific performance, and, in the alternative, by claiming damages for its violation. Now, claims based upon this contract are “connected with and incidental to the main suit,” if they may affect in any way the title upon which the main suit is founded; but they are not so connected and incidental if they cannot affect this title. This contract if it were valid would affect the plaintiff’s title, and therefore this contract may be set up as a defense to the suit, and(its specific performance may be demanded by reconvention. But a claim of damages for its violation could not possibly affect plaintiff’s title, nor any of the rights growing out of the title (such as that to demand immediate possession); hence, such claim in damages is not connected with and incidental to the main suit. This claim would resolve itself, if successful, into a personal judgment against defendant affecting in no way the title to this *357 property, and, ergo, in no way the rights incident to title, including that to immediate possession. This claim of damages is “indeuendent of türe action brought by plaintiff” (0. P. art. 376), and therefore can be urged only in a separate suit.
The judgment appealed from is therefore set aside in so far as it rejects defendant’s reeonventional demand for expenses incurred upon the property, and in so far as it decrees the eviction of defendant without these expenses having been first paid. It is affirmed in so far as it rejects the reeonventional demand as based upon the said contract as a valid and enforceable contract. The case is remanded for trial in accordance with the views herein expressed. Plaintiff to pay the costs of this appeal.
MONROE, C. J., and LECHE, J., take no part.