**175 So. 642**

**WILLIAMS v. FREDERICKS et al.**

No. 34353.

June 21, 1937.

Philip Gensler, of New Orleans, for appellant.

A. P. Tureaud, of New Orleans, for appellees Mrs. Jos. J. Dejoie et al.

E. A. Parsons, of New Orleans, and J. B. Nachman, of Alexandria, for appellees Dr. Rivers Fredericks et al.

O'NIELL, Chief Justice.

The plaintiff is appealing from a judgment dismissing his suit on an exception of no cause or right of action. The suit is for damages for an alleged breach of contract.

The defendants are twenty-two individuals, who are said to have been stockholders and directors of the Louisiana Industrial Life Insurance Company at the time when the alleged contract is said to have been entered into between them and the plaintiff. He avers that the defendants and he together owned a majority of the voting shares of stock in the corporation, and that they constituted a majority of the members of the board of directors and controlled the election of the board. He avers that, some time before the 1st day of January, 1935, which was the date for the annual election of a board of directors, the defendants entered into a verbal agreement with him, by which they employed or agreed to employ him to manage the affairs of the corporation for the term of three years, in the capacity of president of the corporation, at a salary of $500 per month;

and that, to that end, the defendants verbally agreed that they would elect him president of the corporation at the annual election to be held on January 1, 1935, and to retain him in office for the period of three years. He avers that, as a part of the consideration for the promise so made by the defendants, he loaned, paid, and advanced to Dr. Rivers Fredericks, one of the members and the representative of the group with whom he made the contract, the sum of $500, with which to buy additional shares of stock in the corporation, in the name of the group or of any member thereof, and for the benefit of the group, in order to assure the holding of a majority of the voting shares of stock; and he avers that he is informed and believes, and therefore makes the allegation, that the additional stock was bought with the $500 which he loaned, paid, and advanced to Dr. Fredericks for that purpose.

The plaintiff avers that the so-called group—who are the defendants in this suit—elected him president of the corporation for the term of one year, commencing on January 1, 1935, but that, a short time before the expiration of the year, he was informed by the group that they would not re-elect him, and he avers that in fact they did not re-elect him. He avers that the reason why he was elected president of the corporation was that he was a man of successful experience and business ability, and that the corporation was very much in need of the services of a man of his experience and ability. He avers that under his administration during the year 1935 the profits of the business were increased substantially. He avers that he performed his duties faithfully and successfully, and that there was no just cause for the defendants' failure to re-elect him president at the end of his term of one year. Hence he prays for a judgment against the defendants, jointly and severally, for $14,885 damages for the alleged breach of contract. The damages claimed are itemized in the petition thus: (1) $12,000 for "loss of salary for the remainder of the agreed term of office, namely, 2 years, at $500 per month"; (2) $2,385 for "loss to petitioner in value of stock owned by him in the corporation and loss due to expected reasonable profit in value of his shares"; and (3) "loss of $500 put up by him with the group to purchase shares for the benefit of the group."

The item of $2,385 for loss in value of the shares of stock owned by the plaintiff, and loss of an expected reasonable profit in the value of his shares, is not referred to anywhere in the petition, except in the itemizing of the damages claimed. There is no allegation as to how any such loss occurred. As to that item of damages, therefore, the petition certainly does not disclose a cause of action. As to the alleged loss of $500, said to have been loaned to Dr. Rivers Fredericks for the purpose of buying shares of stock for the benefit of the so-called group of stockholders, if the plaintiff has a cause of action, it should be one to recover the money loaned, not an action for damages for the alleged breach of contract to elect him president of the corporation. As to the item of $12,000 "for loss of salary for the remainder of the agreed term of office, namely 2 years, at $500 per month," we must

bear in mind that this suit is not brought against the corporation. It is not the plaintiff's theory that he was employed by the corporation for a term of three years and was discharged two years before the expiration of the term of employment. The suit is not founded upon article 2749 of the Civil Code, which declares that an employer who, without just cause, discharges an employee before the expiration of the term of his employment is obliged to pay him the salary which he would have earned for the full term of his employment. The suit is founded only upon the alleged breach of contract by the twenty-two defendants individually; that is to say, the breach of a contract on the part of the defendants, individually, to so use their authority as stockholders and directors of the Louisiana Industrial Life Insurance Company as to employ the plaintiff to manage the affairs of the company for the term of three years at a salary of $500 per month, by electing him president of the corporation and retaining him in office for three years, at the salary of $500 per month. The plaintiff was a stockholder, and, as we understand from the allegations of his petition, was a director of the corporation, at the time when he entered into the alleged agreement with the twenty-two other stockholders, if in fact such an agreement was had. The plaintiff knew that the stockholders, as such, could not elect the president of the corporation, but could only elect the board of directors, who, in turn, would elect the president of the corporation; and he knew that the board of directors could not elect a president for a term longer than one year.

The agreement, therefore, which he claims of the twenty-two defendants, was to elect, each year, for three consecutive years, a board of directors whose authority to elect a president of their own choice would be bartered away, in favor of the plaintiff, in advance of their election.

The directors of a corporation occupy a fiduciary relation to the stockholders generally, not only to the stockholders who elect them, but to all of the stockholders; and this fiduciary relation to the stockholders forbids a director to bind himself to use his official authority or prerogative for the personal benefit of any one. The leading case on the subject is West v. Camden, 135 U.S. 507, 10 S.Ct. 838, 34 L.Ed. 254, where the doctrine is stated thus:

"1. A contract with the president, who holds as trustee, a controlling interest in the stock of a joint-stock company, that plaintiff should be permanently retained as vice-president of such company at a salary of at least $5,000 per annum, is void as against public policy.

"2. That the consideration of such contract was the sale to the company of the property and business of a competing firm in which the plaintiff was partner, and that plaintiff would unite with his co-partners in such sale, and that defendant was interested as a stockholder in the purchasing company, does not make the contract valid.

"3. The same rule which applies to a public office applies to this case, although defendant was to receive no direct personal pecuniary compensation or gain for what he was to do."

· In that case the plaintiff claimed of the defendant, personally, damages for breach of an alleged contract to retain the plaintiff in the office of vice president of a corporation, the Baltimore United Oil Company, permanently, at a salary not less than $5,000 per annum. The plaintiff averred that, at the time of making the contract, the defendant was the president and a director of the corporation, and held a majority of the shares of stock, as trustee for the Standard Oil Company; and that, in consideration for the alleged agreement, all of the property and business of a competing firm, C. West & Sons, of which the plaintiff, West, was a member, was transferred to the Baltimore United Oil Company. The court held that the contract was not valid, not because it called for the permanent employment or retention of West, but because the fiduciary relation of Camden to all of the stockholders of the Baltimore United Oil Company, as a member of the board of directors of the company, forbade him to enter into any agreement that might oblige or induce him to cast his vote as a director in favor of anyone, for fear of being sued for damages for a violation of the agreement. Here is what the court said on the subject:

"The agreement alleged to have been made was one on the part of the defendant, whereby he might be required to act contrary to the duty which, as an officer of the Baltimore United Oil Company, he owed to that company and to the stockholders other than the plaintiff. The same rule which is applicable to the case of a public office applies to the present case, although it does not appear that the defend- ant was to receive direct personal pecuniary compensation or gain for what he was to do. The plaintiff, on his own showing, dealt with the defendant in reference to the fiduciary relation which the latter bore to the stockholders, both of the Standard Oil Company and of the Baltimore United Oil Company. The agreement alleged was an agreement which bound the defendant as to his future action as a director of the Baltimore United Oil Company," etc.

After quoting several decisions by the Supreme Court of the United States on the subject, the court said:

"We think this principle is equally applicable, on the ground of public policy, although there was not to be any direct private gain to the defendant; for, as was said by the circuit court in this case, it was the right of the other stockholders in the Baltimore United Oil Company 'to have the defendant's judgment, as an officer of the company, exercised with a sole regard to the interests of the company.' A personal liability for damages on the part of the defendant, in case the plaintiff should be removed after an agreement of the character alleged, was calculated to be a strong incentive to the defendant to act contrary to the true interests of the company and of its other stockholders."

West v. Camden was cited in Lothrop v. Goudeau, 142 La. 342, 354, 76 So. 794, 798, thus:

"That a contract by which two directors should agree to vote for each other is illegal, is a proposition that hardly needs elaboration. See West v. Camden, 135 U.S. 507, 10 S.Ct. 838, 34 L.Ed. 254."

The principle is stated in Fletcher Cyclopedia Corporations (Permanent Edition) vol. 2, c. 11, pp. 31, 35, §§ 280, 281, thus:

"An agreement between a third person and directors or other officers whereby the latter place themselves in a position where their duties as officers are, or may be, antagonistic to their duties under the agreement, is void as against public policy. * * * It was said in an Ohio decision [Thomas v. Matthews, 94 Ohio St. 32, 113 N.E. 669, L.R.A. 1917A, 1068] that: 'The authorities are uniform that a director of a corporation cannot 'barter and sell his official discretion nor enter into any contract whatever as to his actions in his official capacity that will in any way restrict or limit the free exercise of his judgment and discretion, or place him under any direct and powerful inducement to disregard his duty to the corporation and the stockholders in the management of the corporate affairs. Such a contract is against public policy and void.'"

The Supreme Court of Minnesota, in Van Slyke v. Andrews, 146 Minn. 316, 178 N.W. 959, 960, 12 A.L.R. 1069, dealing with a contract similar to the one alleged by the plaintiff in this case, said:

"We sustain respondent's contention that the contract set forth in the complaint is void as against public policy, and that no right of action can be founded thereon. The directors of a bank occupy a fiduciary relation to the bank and its stockholders which disables them from binding themselves by contract to take action in their official capacity for the personal benefit of any one. And if they undertake to bind themselves by contract to elect a designated person as an officer of the bank for a specified time at a specified salary, such contract is illegal and void as it might result in detriment to the interests of the bank. [Citing West v. Camden, 135 U.S. 507, 10 S.Ct. 838, 34 L.Ed. 254, and a number of decisions by the highest state courts]."

■ There is no such fiduciary relation on the part of a stockholder of a corporation to the corporation, or to all other stockholders of the corporation, as there is on the part of a director or other officer to the corporation, or between a director or other officer and the stockholders generally. Hence the holders of a majority of the shares of stock, even though they are a minority in number of the stockholders, may combine to control the management of the corporation by the election of their choice of directors, provided they do not thereby violate any statute or any provision in the charter of the corporation, or intend any illegal or unfair object. Fletcher Cyclopedia Corporations, vol. 2, § 280, pp. 33 and 34, and vol. 5, § 2066, p. 228; Manson v. Curtis, 223 N.Y. 313, 119 N.E. 559, at page 561, Ann.Cas.1918E, 247; Chapman v. Bates, 61 N.J.Eq. 658, 47 A. 638, 88 Am. St.Rep. 459; Rogers v. Nashville, C. & St. L. Ry. Co., by the Circuit Court of Appeals, 6th Circuit, 91 F. 299, 313; Gleason v. Earles, 78 Wash. 491, 139 P. 213, 51 L.R.A. (N.S.) 785; Realty Acceptance Corporation v. Montgomery, 51 F.(2d) 636, 639, by the Circuit Court of Appeals for the 3d Circuit; Id., 284 U.S. 547, 52 S.Ct. 215, 76 L.Ed. 476; Bausch & Lomb Optical Co. v. Wahlgren (D.C.) 1 F.Supp. 799, 803.

In the case last cited, Bausch & Lomb Optical Co. v. Wahlgren, by the United States District Court in Illinois, the court distinguished West v. Camden from the case then before the court, thus:

"It is the opinion of this court that the provisions of the seventh paragraph of the contract do not fall within the ruling in West v. Camden, 135 U.S. 507, 10 S.Ct. 838, 34 L.Ed. 254, and kindred cases. * * * In the contract in the instant case Bausch & Lomb, majority stockholder in the Riggs Company which had contracted to sell a part of its stock to Wahlgren, desired to retain Wahlgren in the management of the affairs of the Riggs Company during the period within which Wahlgren was to pay for the stock purchased by him. The agreement to retain Wahlgren in the position of manager was not by an officer or director of a corporation, who was charged with a fiduciary duty to all of the stockholders, but by a stockholder which had a perfect right to vote its stock in the way in which, in its opinion, its interests would be advanced. * * * The contract here bears 'no more than a surface resemblance' to the contract in West v. Camden."

The contract in the case which we are now considering bears "more than a surface resemblance" to the contract in West v. Camden. In fact, the contracts are alike in that the obligation which the defendants in this case undertook was a pledge of the votes of a majority of the members of the board of directors of the corporation, to be cast in favor of the plaintiff, at each annual election of officers during the period of three years. That is the only method by which the defendants could have undertaken to retain the plaintiff in office as president of the corporation for the period of three years. According to West v. Camden, such an undertaking is not a valid contract.

The plaintiff in this case relies particularly upon the doctrine of the case of Realty Acceptance Corporation v. Montgomery, supra. It was in that case that it was said, of the contract that was in question in West v. Camden, that the contract bore no more than a surface resemblance to the contract then in dispute. The case of the Realty Acceptance Corporation v. Montgomery was a suit by Henry G. Montgomery against the Realty Acceptance Corporation for damages for breach of a contract by which the corporation employed or elected the plaintiff as president of the corporation, and as president of the Stuyvesant Corporation, all of whose stock was owned by the Realty Acceptance Corporation, for the period from October 1, 1924, to December 31, 1929, at a salary of $25,000 per annum, payable in monthly installments. The only defense pleaded against the suit was that the by-laws of both corporations required that the president should be elected annually. The plaintiff argued that, as there was no statutory inhibition, nor inhibition in the charter of the corporation, against the employment or election of officers for a longer term than that fixed in the by-laws, the affirmative vote of a majority of all of the members of the board of directors, employing or electing a president for a term longer than that fixed in the by-laws, was, to that extent, a supersession of the by-laws, and should prevail over

them. The reason for that was that the by-laws were made by the board of directors and were therefore subject to amendment or repeal at the will of the board. The court sustained the plaintiff's contention; and, referring to the agreement which was declared invalid in West v. Camden, 135 U.S. 507, 10 S.Ct. 838, 34 L.Ed. 254, said:

"It was not an agreement by the corporation itself. Inasmuch as its breach might readily be presumed to result in personal liability for damages, the agreement was of a character to place defendant's personal interest in possible conflict with the best interests of the corporation and its stockholders, and, as plaintiff knowingly dealt with defendant with respect to a subject-matter touching his fiduciary relation to the stockholders, the contract was manifesly void as against public policy."

The agreement alleged by the plaintiff in this case cannot be sustained on the theory that it is a voting trust; that is to say, an agreement to place in the hands of a person or persons selected by two or more stockholders their shares of stock, in trust, for the purpose of voting them in order to control the management or affairs of the corporation. The law of this state that expressly authorizes agreements called "voting trusts" is in section 33 (page 432) of Act No. 250 of 1928, which, in section 73, is entitled "Business Corporation Act"; and, according to section 33 of the act, an agreement, in order to constitute a "voting trust," must be made in writing and be filed in the registered office of the corporation. According to section 2 of the statute, it provides for the organizing of corporations for conducting any lawful business "except the business of banking and insurance." Assuming, however, that the provisions of section 33 of the act sanction agreements called "voting trusts" between or among stockholders of banking or insurance companies, the agreement alleged by the plaintiff in this case, being a verbal agreement, would not be within the provisions of the statute.

The judgment is affirmed.